J. DONALD KYSER ET AL. v. ZONING BOARD OF APPEALS OF THE TOWN OF WESTPORT ET AL.

J. DONALD KYSER ET AL. v. ZONING BOARD OF APPEALS OF THE TOWN OF WESTPORT ET AL.

J. DONALD KYSER ET AL. v. MICHAEL SOCHACKI ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued May 2—decided June 14, 1967

*J. Peter LaChance,* for the appellants (named plaintiff et al. in the first case).

*Alan H. Senie,* with whom was *J. Peter LaChance,* for the appellants (named plaintiff et al. in the second case).

*Jack Stock,* with whom, on the brief, was *J. Peter LaChance,* for the appellants (named plaintiff et al. in the third case).

*Edwin K. Dimes,* for the appellee (named defendant in the first and second cases).

*John Keogh, Jr.,* for the appellees (defendants Bomar in the first and second cases); with him, on the brief in the first case, was *Robert A. Fuller.*

*Robert N. Grosby,* for the appellee (defendant Sochacki in the second and third cases); with him, on the brief in the third case, was *John Keogh, Jr.,* for the appellees (defendants Bomar).

HOUSE, J.   Although each of these appeals is from the judgment rendered in a separate action, the factual basis of the three cases is sufficiently similar to permit the decision of the appeals in one opinion.  They all involve the same three adjoining lots in Westport and were tried seriatim in the Court of Common Pleas.

William E. and Byrd F. Bomar, defendants in all three cases, in 1951 acquired lot 16 of a tract shown on a map entitled "Map of Property at Westport, Conn. Surveyed For Isabel G. Redpath Scale 1 In. == 40 Ft. Jan. 1937."  The map is recorded in the Westport land records as map 1180.   The Bomars presently live in a house on that lot.  Later they purchased lot 7, which is contiguous to lot 16 and adjoins it on the east.  The northerly lines of the two lots do not meet, the northerly line of lot 7 being about eight feet south of the northerly line of lot 16, and for this distance lot 16 is bounded on the east by lot 6, which lies immediately north of lot 7 and is now owned by J. Donald and Judith C. Kyser, plaintiffs in all three cases.  In 1952, the Bomars built a porch on the easterly rear of their house on lot 16, facing the rear of their lot 7.  In 1953, the area was rezoned from a minimum requirement of quarter-acre lots to a minimum requirement of half-acre lots.  In 1956, the Kysers purchased lot 6 and erected a house thereon.  By their purchase they acquired a common, side boundary with lot 7, on the south, and a common, rear boundary with the Bomars' lot 16, for a distance of about eight feet.  In 1957, the Bomars obtained a variance to permit the sale of lot 7 as a separate lot of less than one-half acre in size.  Thereupon, the porch violated the twenty-five-foot rear setback requirements of the zoning regulations since it extended to a

point only eight feet from the dividing line between lots 16 and 7. In April, 1965, upon the Bomars' application, the Westport zoning board of appeals granted a variance from the twenty-five-foot rear setback requirement to legalize the location of the porch on their house only eight feet from the rear of their lot 16 property line.

## I

The first case arises out of the granting of this 1965 variance. The Kysers and the owners of the lots lying north and south of the Bomars' lot 16 appealed to the Court of Common Pleas from the decision granting the variance. They alleged, inter alia, that the board of appeals had acted illegally in that there was no evidence of exceptional difficulty or unusual hardship which justified the board's decision. The plaintiffs expressly alleged that they were aggrieved by the action of the board in granting the variance because the value of their properties was adversely affected, their legal rights were violated, and they suffered a diminution in the use and enjoyment of their properties. The Bomars were joined as defendants. All the defendants denied the plaintiffs' allegations of aggrievement. The court heard testimony on the question of aggrievement, concluded that the plaintiffs had failed to sustain their burden of proving that they were aggrieved persons, and, accordingly, dismissed the appeal. From that judgment, only the Kysers have appealed to this court.

The Kysers urge that to prove aggrievement it was unnecessary for them to establish more than the fact that they were owners of property adjoining that for which the variance was granted. Although it is undoubtedly true that in many, if not

most, cases the owner of property adjoining that for which a variance has been granted is able to prove aggrievement, proximity alone does not establish it. Here, the question of aggrievement was put in issue by the pleadings, and the Kysers make no claim that they offered any evidence of aggrievement aside from proving the proximity of their premises. There is nothing in the record or the appendix to the brief of the Kysers to show that the value of their property would be specifically lessened or that any other property or legal right of theirs would be specifically and injuriously affected by the granting of the variance. The appeal is, accordingly, governed by the principles reenunciated in *Parcesepe* v. *Zoning Board of Appeals,* 154 Conn. 46, 47, 221 A.2d 270, and cases cited, to which may be added *Hickey* v. *New London,* 153 Conn. 35, 38, 213 A.2d 308, and *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545. The Court of Common Pleas correctly concluded that it had no jurisdiction because the plaintiffs did not qualify as aggrieved persons under General Statutes § 8-8. There was therefore no error in the judgment dismissing that appeal.

## II

In the second case, the Kysers were again plaintiffs, together with the owners of another lot in the area, and to the named defendant and the defendants Bomar, Michael Sochacki has been added as a defendant. By deed dated June 4, 1965, the Bomars conveyed lot 7 to Sochacki, the deed making specific reference to that lot as shown on map 1180 on file in the office of the Westport town clerk. The deed reserved as an appurtenance to the Bomars' lot 16 "the *exclusive* use (including,

but not limited to, the right to grade, landscape and fence)" of an area sixty feet by twenty feet on lot 7 adjacent to the easterly boundary line of lot 16. Upon acquiring title, Sochacki applied to the Westport building inspector and zoning enforcement officer for a permit to build a house on lot 7. With his application, Sochacki submitted a plot plan showing the location of the proposed house on lot 7, using the identical lot dimensions which appear on map 1180 and in his deed from the Bomars. The plot plan, however, referred by number to map 4578 rather than map 1180. Map 4578 was a map which the Bomars had caused to be prepared and filed in the office of the town clerk in 1958. This map showed a jog cut out of lot 7 where it adjoined lot 16. In the plan submitted with the application for a building permit, however, the jog indicated on map 4578 was not shown, and the line between lots 16 and 7 ran in a straight line so that in all respects the plan depicted lot 7 to be as shown on map 1180. Map 4578, although signed by the 1958 secretary of the zoning board of appeals as approved by that board, was in fact never approved by that board. It is undisputed that no subdivision of lot 7 as shown on map 1180 was ever approved by the zoning authorities, and all parties agree that for zoning purposes map 4578 was illegal and a nullity. See General Statutes §§ 8-18, 8-25 (Rev. to 1966); Westport Subdivision Regs. §§ 1.3–1.5 (1955, as amended). The dimensions of the house on the plan submitted to the building inspector were shown as sixty-four feet by thirty-four feet. At the same time, Sochacki also filed an application for a permit to construct a private sewage disposal system on lot 7, and a similar plot plan was filed with this application. This plan, however, showed

the dimensions of the proposed building on the lot to be sixty feet by twenty-eight feet. A permit was issued by the town sanitarian on June 29, 1965, and the building inspector granted the building permit on July 1, 1965. On July 8, the plaintiffs appealed to the zoning board of appeals from the granting of the building permit.

On July 16, while the plaintiffs' appeal to the zoning board of appeals was pending, to remove the Bomars' reservation of the use of a portion of lot 7 and obviate any question as to whether that reservation had reduced the size of that lot below the minimum lot size required by the zoning regulations, Sochacki quitclaimed lot 7 back to the Bomars, and they thereupon, by warranty deed, reconveyed it to him. The July 16 deed to Sochacki contained no reservation by the Bomars of any right to use a portion of lot 7. It did, however, contain a restriction, which the June 4 deed had also contained, that no building should be constructed on the lot at a greater height than twenty-two feet from ground level and limited the height of any fences or vegetation on the westerly thirty feet of the lot.

On October 6, after a hearing held on August 12, the zoning board of appeals voted unanimously to deny the plaintiffs' appeal. The minutes of the board's executive session disclosed that the members of the board in executive session reviewed with the building inspector and the sanitarian the procedures which those officials used in processing applications for building and health permits "in general and specifically, as applied to this case in question" and that the board "felt that there were no irregularities involved to warrant reversing the action of the Zoning Enforcement Officer and Building

Inspector in issuing a zoning and building permit." From the board's decision, the plaintiffs appealed to the Court of Common Pleas.

In their appeal the plaintiffs alleged that the defendant board had acted illegally and in abuse of its discretion in sustaining the action of the zoning enforcement officer in that lot 7 as conveyed to Sochacki contained an illegal reservation, the effect of which was to reduce the size of the lot to less than allowed by the Westport planning and zoning regulations, that the lot was part of an illegal subdivision, that the Bomars' conveyance of lot 7 without obtaining a waiver on their remaining lot, lot 16, rendered that lot illegal and nonconforming, and that the board acted illegally and in violation of due process of law in reviewing with the building inspector and sanitarian the procedures used in processing applications for building and health permits, generally, and in this case, without notice to the plaintiffs. By way of relief the plaintiffs claimed judgment reversing the action of the zoning enforcement officer and building inspector, declaring the permits void and illegal, and restraining Sochacki from proceeding with construction pending the outcome of the appeal.

The Court of Common Pleas decided the appeal on the record returned by the board except that it heard additional testimony with respect to the allegation of illegal conduct on the part of the board in conferring in executive session with the building inspector and sanitarian. In so doing the court acted pursuant to § 8-8 of the General Statutes (Rev. to 1966), which expressly authorizes the court to take additional testimony if it appears to the court that it is necessary to do so for the equitable disposition of the appeal. See *Young* v. *Town*

*Planning & Zoning Commission,* 151 Conn. 235, 241, 196 A.2d 427. The court concluded that the plaintiffs were entitled to appeal as aggrieved persons but found the issues for the defendants and rendered judgment accordingly.

The Kysers appealed from this judgment and filed a request for a finding accompanied by a draft finding which included nine claims of law which they asserted they had made to the trial court respecting the judgment to be rendered. The defendants filed a counterfinding. The court filed a finding limited to the issue of the alleged procedural irregularities and the conduct of the board in its executive session, this being the only issue on which it had heard evidence. In this finding the court concluded (1) that the plaintiffs had failed to sustain their burden of proving that the conduct of the board in its executive session violated the fundamentals of natural justice and (2) that the conduct of the board in the executive session was not improper or unlawful. The court also made a finding that the plaintiffs had made two claims of law. The first was a claim that the board had acted illegally in reviewing the case with the building inspector in its executive session. The other claim was that the defendants should not have been permitted to introduce before the court the testimony of the building inspector as to what happened at the executive session since that testimony was not necessary for an equitable disposition of the appeal.

The Kysers have assigned error in these two conclusions of the court, in its overruling of the two claims of law noted in the finding, "[i]n failing to state and to accept the claims of law made by the plaintiffs in paragraphs 16 through 24 of the Draft Finding," and in admitting the testimony of the

building inspector. Errors assigned with respect to the finding of some facts and the refusal to find others have not been briefed and are therefore considered as abandoned. *Derby Savings Bank* v. *Kurkowski,* 155 Conn. 60, 63, 230 A.2d 26.

We are here again presented in an appeal in a zoning case with an appellate record which is inadequate to permit a review of all the errors assigned. In the usual zoning appeal case, since the trial court hears no evidence except on the issue of aggrievement and makes its determination on the facts contained in the record of the hearing before the zoning board, no finding of facts is necessary except on the issue of aggrievement. *Nielson* v. *Zoning Commission,* 149 Conn. 410, 414, 180 A.2d 754; *Gordon* v. *Zoning Board,* 145 Conn. 597, 600, 145 A.2d 746; *Winchester Repeating Arms Co.* v. *Radcliffe,* 134 Conn. 164, 169, 56 A.2d 1. "A limited finding is necessary, however, where error is claimed in conclusions of law or fact drawn by the trial court which do not appear on the face of the record. Practice Book § 609; *Farrell* v. *Spangle,* 151 Conn. 709, 710, 200 A.2d 487; *Leonard* v. *Zoning Board of Appeals,* 151 Conn. 646, 648, 201 A.2d 466; *Tuite* v. *Tuite,* 150 Conn. 345, 346, 189 A.2d 394; Maltbie, Conn. App. Proc. § 126. That finding should include, so far as is necessary to present the questions which the appellant desires reviewed, the claims of law stated substantially as they were actually made by counsel at the trial, the rulings of the court thereon and the rulings desired to be reviewed. Practice Book § 619; see § 223." *Wagner* v. *Zoning Board of Appeals,* 153 Conn. 713, 714, 216 A.2d 182; *Faubel* v. *Zoning Commission,* 154 Conn. 202, 204, 224 A.2d 538. In the present case, the court's limited finding of facts was properly restricted to the facts as to

which it heard testimony. The court's finding as to the claims of law made by the plaintiffs, however, is also limited to the issue as to which it heard evidence. The Kysers assert that pursuant to § 223 of the Practice Book, the plaintiffs made to the trial court nine further claims of law, which, pursuant to § 619, should have been included in the finding "with the rulings of the court thereon." There is no finding by the court that the plaintiffs did make such claims. If they did make them, the court should have included them in its finding. On the record we cannot determine whether in fact the plaintiffs did not make these claims and that hence the court properly refused to find that they were made or whether the claims were made but the court erred in refusing so to find.

An appellant is not without proper remedy in the latter circumstance. As we said in *Rifkin* v. *Rifkin,* 155 Conn. 7, 8, 229 A.2d 358: "Upon the court's failure, however, to comply with [Practice Book] § 619 and to include the claims and rulings in the finding, if the claims were in fact made, it was incumbent upon the plaintiff to seek a rectification of the appeal pursuant to § 675 of the Practice Book. Failure to do so leaves this court unable to determine from the record whether or not in fact the plaintiff made any claims of law to the trial court."

Under the unusual circumstances of these three cases, appealed simultaneously, it appears that the Kysers have not been foreclosed from appellate consideration of most, if not all, of the rulings on claims of law as to which they seek review since it appears that they have also been raised in the third case, which will be considered after our discussion of the remaining assignments of error in this second case.

In the present case, the record discloses that the various maps and plot plans were the subject of controversy at the hearing before the board, where they were introduced as exhibits. The sanitarian was there questioned particularly with regard to the apparent discrepancy in the dimensions of the proposed building as it was plotted on the plan submitted with the application for the building permit and on the plan for the septic-tank layout. The records of the zoning board disclose that, in executive session after the hearing on the plaintiffs' application, the board voted to reserve decision "in order to further study the discrepancies between the deeds and the maps." Then the board's records disclose that, after the board had reviewed with the building inspector and the sanitarian the procedures they use in processing applications for permits "in general and specifically, as applied to this case", the board concluded that there were no irregularities which warranted a reversal of the action by the building inspector in issuing the zoning and building permit to Sochacki. In their appeal to the Court of Common Pleas, the plaintiffs expressly alleged that this review of procedures with the enforcement officer and sanitarian was "improper, illegal and in violation of due process of law." In the light of the record before the court and this express allegation of impropriety and illegality, the trial court could reasonably and logically conclude that additional testimony, limited to what had occurred at the executive session, was necessary for the equitable disposition of the appeal and, accordingly, was permitted by § 8-8 of the General Statutes (Rev. to 1966).

That limited hearing disclosed that the two officials were called into the board's executive session

where they were present for about two and one-half minutes to explain the discrepancy in the building dimensions shown on the two plans submitted with Sochacki's applications. The explanation was a very simple one and did nothing more than confirm what the sanitarian had already testified to at the hearing before the board, that is, that the zoning officer was concerned with all the roofed-in areas of the proposed structure to be certain that the building as located conformed to the setback requirements of the zoning regulations. Hence, he plotted the building on the plot plan according to the area covered by the roof of the building which was sixty-four feet by thirty-four feet. On the other hand, the sanitarian was concerned only with the position of the septic system and leaching gallery in relation to the foundation of the building and, accordingly, only the sixty- by twenty-eight-foot foundation measurements of a building were shown on the plot plan for use of his department. The Sochacki house was designed with cantilevered decks protruding beyond the foundation of the house. Thus, any confusion in the minds of the board members with respect to the differing dimensions disclosed on the two plot plans was cleared up, and the board, in executive session and after the two officials had left, voted unanimously not to reverse the action of the inspector in issuing the zoning and building permit.

Under all the circumstances and since it appears that exactly what happened at the executive session was fully examined by the court, that the clarification of procedures given by the officials merely reaffirmed that already given at the public hearing, that, even if the discrepancy between the plot plans had not been further explained and the larger

dimensions alone were considered by the board, there was nevertheless no violation of the zoning regulations in the location of the building, that neither official had any personal interest in the subject of the controversy, that neither spoke in favor of or against the plaintiffs' appeal or attempted to influence the board in its decision, that the board, composed of laymen, is entitled to professional technical assistance in carrying out the responsibilities of their office; *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 421, 143 A.2d 639, cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121; and, most importantly, that the plaintiffs were in no way prejudiced by what happened during the executive session, we cannot say that the court could not reasonably reach the conclusion that the board did not act arbitrarily, illegally or in abuse of its discretion. This is the test to be applied to its action. *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 407, 225 A.2d 637; *Lupinacci* v. *Planning & Zoning Commission,* 153 Conn. 694, 699, 220 A.2d 274.

We would not go so far as did the trial court in its memorandum of decision, which characterized the conduct of the board as "commendable." The administration of the liberal, discretionary powers of a quasi-judicial body, such as a zoning board of appeals, demands the highest public confidence. *Josephson* v. *Planning Board,* 151 Conn. 489, 493, 199 A.2d 690; *Spesa* v. *Zoning Board of Appeals,* 141 Conn. 653, 656, 109 A.2d 362; *Low* v. *Madison,* 135 Conn. 1, 9, 60 A.2d 774. It is far better therefore that no room be given for suspicion or cavil and that every effort be made to avoid the creation of a situation which might tend to weaken not only public confidence in the action of a zoning board but

the confidence of a disappointed applicant to it. *Daly* v. *Town Plan & Zoning Commission,* 150 Conn. 495, 500, 191 A.2d 250. The board could easily have afforded the plaintiffs an opportunity to be present during its questioning of the two officials as to the procedures followed by their respective departments where that inquiry concerned not just those procedures in general but involved particular reference to the plaintiffs' appeal, which the board had under consideration. Such a course would have been preferable, but since the court's full inquiry into the course which was followed discloses no harm or prejudice to the plaintiffs, we find no error in the court's conclusion and, accordingly, no error in the judgment rendered in the second case.

### III

The third case was instituted by the same persons who were the plaintiffs in the second case, and the defendants are, again, the Bomars and Sochacki. The complaint in this action was dated August 5, 1965, at which time the plaintiffs' appeal, from which the second case arose, was pending before the Westport zoning board of appeals. It was originally returned to the Superior Court but was subsequently transferred to the Court of Common Pleas for decision in conjunction with the first two cases.

Generally, the three-count complaint reiterates the circumstances disclosed in the first two cases. These include the Bomars' acquisition of lots 16 and 7, the variance granted for lot 7, the June 4 conveyance of lot 7 to Sochacki with the reservation and restriction, the July 16 exchange of deeds which removed the reservation, an alleged illegal subdivi-

sion of lot 7 by the Bomars' filing of map 4578, and Sochacki's allegedly illegal construction of his house on lot 7. Although it is difficult to categorize the plaintiffs' action, it appears to be one based on an alleged illegal conspiracy to circumvent the Westport zoning regulations. By way of relief the plaintiffs claimed $10,000 damages and a permanent injunction against the construction of the Sochacki house on lot 7. The court found the issues for the defendants, concluding that the plaintiffs failed to prove any damages caused by acts of the defendants committed pursuant to an illegal conspiracy and that the plaintiffs failed to prove an illegal subdivision or resubdivision of the defendants' properties. The Kysers have taken an appeal from the judgment rendered.

Most of the Kysers' assignments of error have not been pressed or pursued in their brief, and the one questioned evidential ruling, excluding an opinion as to any depreciation of the Kysers' property, has not been properly presented for review owing to a failure to comply with § 648 of the Practice Book. See Practice Book Form No. 604. Furthermore, there is no allegation in the complaint that the values of the plaintiffs' properties had depreciated. The Kysers have briefed and press claims that the court erred in concluding that the combined action of the defendants did not reduce the size of lot 7 as shown on map 1180 and that the plaintiffs are not entitled to injunctive relief "and/or" damages as a result of the claimed illegal conspiracy of the defendants to render lot 7 undersized and nonconforming.

It is readily apparent that the plaintiffs could not prevail in this third case if they did not establish some zoning violation on the part of Sochacki

on lot 7, and counsel candidly and properly admitted this both to the trial court and in argument to us. In the second case, as we have already noted, the plaintiffs were unsuccessful in proving their claims that Sochacki's actions on lot 7 were in contravention of the Westport zoning regulations and in their attempt to secure an order restraining Sochacki from proceeding with construction. We have found no error in that judgment. In fact it may well be doubted that this third case could have survived a timely motion to erase, since it was brought in the Superior Court for injunctive relief at a time when the plaintiffs were already seeking equitable relief and still pursuing, and had not exhausted, the orderly appeal procedure provided as a legal remedy afforded in the Court of Common Pleas to those claiming aggrievement in a zoning case. See General Statutes (Rev. to 1966) §§ 8-7, 8-8, 8-9; *Country Lands, Inc.* v. *Swinnerton,* 151 Conn. 27, 33, 193 A.2d 483.

That aside, we find no error in the conclusions reached by the court. It is quite evident that the Bomars, living in the house on lot 16, at a higher elevation than lot 7 and with a view over lot 7, wished to preserve as much of their view as possible. There was nothing to indicate that the restrictions in their deed to Sochacki, designed to preserve this view, were invalid or illegal. *Harris* v. *Pease,* 135 Conn. 535, 66 A.2d 590. Nor have the plaintiffs pointed to any provision of the Westport zoning regulations which prohibits such a restriction or the divided ownership or use of a lot so long as the actual use conforms to the zoning requirements. Here Sochacki alone had title to lot 7, and, as used, the lot fully conformed to the single-house use requirement. In any event, the Bomars' earlier

reservation of the right to use a portion of the premises was effectively removed by the exchange of deeds on July 16, prior to the hearing before the zoning board of appeals, and, in considering the plaintiffs' claim for injunctive relief, the court properly considered the situation as it was at the time of the hearing. *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 323, 207 A.2d 58; *Holt* v. *Wissinger,* 145 Conn. 106, 115, 139 A.2d 353.

We find no merit whatsoever to the plaintiffs' claims that lot 7 was illegally subdivided and resubdivided or that lot 16 became nonconforming despite the fact that the zoning board granted the Bomars separate variances, one permitting them to maintain their porch on the house on lot 16 closer to the boundary line of lot 7 than regulations permitted and the other, to sell lot 7 as a separate lot although owing to a change in the regulations it did not conform to the new requirements for the minimum size of a lot. Map 4578 was never approved by the Westport zoning board and should not have been accepted for filing in the office of the town clerk. Hence, the filing of this map did not constitute a subdivision of lot 7 as that lot was described on map 1180, nor did the subsequent conveyance of lot 7 as shown on map 1180 then constitute an illegal resubdivision of the lot back to its original size.

Sochacki explained to the satisfaction of the court his reference to map 4578 rather than 1180 in making his applications for the permits. The court expressly found that, although the plot plans filed with the applications referred to map 4578, Sochacki actually used for his plot plan the dimensions which appear on map 1180, the same map referred to in the deed which transferred lot 7 to him. It was fully

justified in rejecting the plaintiffs' ingenious but unsound contention that lot 7 became an illegal subdivision or resubdivision as a result of the Bomars' filing of the unapproved map 4578 and Sochacki's reference to that map number rather than to 1180 in connection with his permit applications.

The finding amply supports the further conclusion of the court that the plaintiffs failed to sustain their burden of proving that they are entitled to any injunctive relief or that they suffered any damage caused by the acts of the defendants committed pursuant to an illegal conspiracy to violate the Westport zoning regulations.

We find no error in the third case.

## IV

There is no error in any of the three cases.
In this opinion the other judges concurred.