[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I FACTS
The plaintiff, Daniels Hill Development, LLC, is the owner of land consisting of approximately 39.840 acres in the Town of Newtown. Said property is located in a 2 acre farming and residential zone and abuts Parmalee Hill Road and Georges Hill Road, both public highways in the Town of Newtown. The property has about 200 feet of frontage on Parmalee Hill Road and about 200 feet of frontage on Georges Hill Road. The two roads are at the opposite ends of the subject property. (Exhibit 62.) CT Page 794
On January 20, 1999, the plaintiff applied to the defendant Commission for approval of a subdivision of its property into thirteen (13) residential lots. Public hearings on plaintiff's application were conducted on March 4, 1999 and March 18, 1999. Plaintiff proposed that twelve (12) of the residential lots were to have frontage on a new subdivision road to be known as "Daniels Hill Road" which would intersect with Parmalee Hill Road. The remaining proposed lot would front on Georges Hill Road.
On May 20, 1999, the defendant Commission received and read into the record correspondence from Mary M. Kelly, the director of transportation for the Newtown Public Schools (hereinafter referred to as the Kelly letter). (Exhibit 26.) The Kelly letter was addressed to Elizabeth Stocker and it addressed traffic concerns on Parmalee Hill Road. Ms. Kelly is neither a member of the Commission's staff nor a consultant to the Commission. The plaintiff was not given an opportunity to rebut Ms. Kelly's expressed concerns.
At said May 20, 1999 meeting, the defendant Commission disapproved the plaintiff's application for subdivision approval and legal notice of the action of the defendant Commission published in the Newtown paper on May 28, 1999. The stated reasons for said denial were "because the application is in violation of Newtown Subdivision Regulation 4.02.200 and not in keeping with the interest of Article I of the Newtown Zoning Regulations." (Exhibit 69, pp. 44-45.)
Section 4.02.200 of the Newtown Subdivision Regulations provides that "[w]here a subdivision in the opinion of the Commission would require unreasonably large expenditures by the Town to grade and improve existing streets to serve vehicular and pedestrian traffic to be generated by the proposed subdivision in a safe manner, the Commission may disapprove said subdivision unless such expenditures has been approved by the legislative body of the Town, or the grading or improvement of said existing street or streets is included in the application for final approval, or the subdivider has entered into a contract with the Town for a nominal consideration to improve said existing street to serve the traffic to be generated by the proposed subdivision in a safe manner. In the event that the subdivider intends to enter into such a contract with the Town, a copy thereof and a plan and profile showing the work to be done shall be submitted CT Page 795 to the Commission prior final approval." Article I of the Newtown Planning and Zoning Regulations is a general statement of the purpose of the Planning and Zoning Regulations to promote health and general welfare and to secure safety from fire, panic, flood and other dangers.
 A STANDARD OF REVIEW
When reviewing a subdivision application, a planning commission acts in an administrative capacity. Reed v. Planning ZoningCommission, 208 Conn. 431, 433 (1988). The Commission is limited to determining whether or not the subdivision application complies with the subdivision regulations. R.B. Kent Son, Inc.v. Planning Commission, 21 Conn. App. 370, 373 (1990). When reviewing a subdivision application, the Commission must approve a subdivision if it conforms to the subdivision regulations.Paige v. Town Plan Zoning Commission, 35 Conn. App. 646, 657
(1994). However, if the subdivision application does not conform with the subdivision regulations, the planning and zoning commission must disapprove the subdivision. Forest ConstructionCo. v. Planning Zoning Commission, 155 Conn. 669, 675 (1967).
When the planning commission gives reasons for denial of a subdivision application, the question on appeal is whether any of the reasons assigned for denial of the application were valid.Blakeman v. Planning Commission, 152 Conn. 303, 306 (1965). The question for the Court on appeal is whether any of the reasons given by the Commission for denial of the subdivision are supported by the express language of the Commission's regulations and whether the denial, based upon specific sections of the subdivision regulations, is reasonably supported by evidence in the record. Crescent Development Corporation v. PlanningCommission, 148 Conn. 145-150 (1961).
The Commission gave two reasons for denial of the subdivision application. Accordingly, the question for the Court is whether either of the two reasons assigned by the Commission are valid, and whether there is evidence in the record to support said reason, Property Group, Inc. v. Planning Zoning Commission,226 Conn. 684, 697 (1993).
 II
CT Page 796 DISCUSSION
The plaintiff has identified three issues for the Court's consideration, namely:
1. Is the plaintiff aggrieved?
2. Did the Commission accept and rely on improperly received post public hearing correspondence from Mary M. Kelly?
3. In denying plaintiff's application for subdivision approval for the reasons stated, did the defendant Commission EXCEED ITS STATUTORY AUTHORITY?
These issues will be discussed in seriatim.
 B AGGRIEVEMENT
The plaintiff established at trial that it is the owner of the parcel of land for which the aforesaid subdivision approval had been requested. Therefore, the plaintiff is statutorily aggrieved pursuant to § 8-8 of the Connecticut General Statutes
 C KELLY LETTER
The plaintiff claims that the Kelly letter was improperly considered by the Commission. Counsel for the defendant admitted in argument that it was clear that this letter was relied upon by the Commission.
After the public hearing had closed, the Commission received a report from Elizabeth Stocker, the director of community development, who is a consultant and advisor to the Commission. (Exhibit 25.) She indicated that additional improvements to Parmalee Hill were planned for the next fiscal year if there was no budget reduction during the budget process. She also stated that there was no road work agreement with the developer of the subdivision for additional improvements. The Commission also received a letter dated May 13, 1999 from Mary Kelly, who is the director of transportation of the Newtown Public Schools. The letter was submitted to the Commission with Ms. Stocker's report CT Page 797 and states, inter alia, that the public schools do not send passenger buses to the part of Parmalee Hill Road near the proposed subdivision for safety reasons.
Plaintiff argues that the Commission improperly considered the Kelly letter because the hearing was already closed and the plaintiff had no opportunity to cross-examine the witness. In support of its argument, plaintiff cites Norooz v. InlandWetlands Agency, 26 Conn. App. 564 (1992). Defendant argues that the receipt of the letter does not invalidate the Commission's decision because (1) it was not submitted by an opponent to the subdivision; and (2) it was cumulative evidence on an issue which had already been raised and discussed at the public hearing.
There are certain situations wherein the receipt of evidence after a public hearing is closed, without an opportunity for the other side to rebut said evidence, allows the trial court to invalidate the agency's decision for illegal receipt of evidence after a public hearing. See Wasicki v. Zoning Board,163 Conn. 166 (1972); Pizzola v. Planning Zoning Commission,167 Conn. 202 (1974). However, the cases which have invalidated commission decisions for illegal receipt of evidence involve factual situations wherein the evidence is submitted by a proponent or opponent of the application without giving the other side a chance to respond to additional evidence. Defendant argues that since Ms. Kelly was not a proponent or opponent of the application, her letter should be allowed as the contribution of a municipal employee. Although Mary Kelly is not a regular advisor to the Commission, she is a municipal employee. Further, it is argued, it is customary practice for a planning and zoning commission to receive comments after the public hearing from its staff, consultants, and from the municipal officials.
Connecticut case law recognizes a clear exception to the limitation on presentation of evidence after the close of a public hearing, where the commentators are municipal officials. See Spero v. Zoning Board of Appeals, 217 Conn. 435, 444 (1991);McCrann v. Town Plan Zoning Commission, 161 Conn. 65, 77
(1971); Holt-Lock, Inc. v. Zoning Planning Commission,161 Conn. 182, 185 (1971); and Kyser v. Zoning Board of Appeals,155 Conn. 236 (1967). It is axiomatic that a municipal agency should not consider information supplied by a party to a contested hearing on an ex parte bases. Daniel v. Zoning Commission,35 Conn. App. 594, 597 (1994). As recognized in Norooz, supra, 573, 574, the proper inquiry for a reviewing court, when confronted CT Page 798 with an administrative agency reliance upon non-record information provided by its technical and professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter. Norooz v. InlandWetlands Agency, supra, 573-74. If the evidence was improperly received, there is a rebuttable presumption of prejudice, and the burden shifts to the defendant to show that the evidence did not adversely affect the result, which can be proven by other evidence. Blaker v. Planning Zoning Commission, 212 Conn. 471,478-481 (1989).
Upon a review of the record, the Court finds that the evidence in the Kelly letter was cumulative to evidence previously presented at the public hearing. There were numerous comments to the effect that the road was narrow and dangerous in the vicinity of the proposed subdivision and intersection, and that there were problems with the school buses using the road. During oral argument, in fact, counsel for the plaintiff admitted that the Kelly letter did not raise any new issues for consideration. Therefore, applying the Norooz standard of review, the Court finds the defendant's consideration of the Kelly letter to be proper. The plaintiff had ample notice of the issues discussed in the Kelly letter to have addressed said issues at the prior public hearings.
 D REASONS FOR DENYING SUBDIVISION APPLICATION
The stated reasons for denying the application were because the application was not in keeping with the intent of Article I of the Newtown Zoning Regulations and the application was in violation of Newtown Subdivision Regulation § 4.02.200 (Exhibit 69). Article I of the Newtown Zoning Regulations is a general statement of the purpose of the zoning regulations (Exhibit 68).
Defendant concedes that general policy statements in the regulations referring to public health and safety are not valid reasons to deny a subdivision application. Sowin Associates v.Planning Zoning Commission, 23 Conn. App. 370, 376 (1990). General provisions can only be used to deny an application in conjunction with the specific standards in the regulations.Kosinski v. Lawlor, 177 Conn. 420, 423 (1979). Therefore, the general statement that the application did not conform to Article CT Page 799 I, in and of itself, would not furnish a sufficient basis to deny the subdivision application.
Plaintiff argues that defendant denied plaintiff's application for subdivision because of perceived problems on Parmalee Hill Road adjacent to plaintiff's property. It argues that since plaintiff's property is zoned for 2 acre residential dwellings, "The designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effects on traffic, municipal services, property values, or the general harmony of the district." TLC Development, Inc. v.Planning Zoning Commission, 215 Conn. 527, 532-33 (1990). See also Sowin Associates, supra, 370-376. Plaintiff also cites Reedv. Planning Zoning Commission, supra, 431, for the proposition that the planning commission, acting in its administrative capacity herein, has no discretion or choice but to approve a subdivision if it conforms to the regulation adopted for its guidance.
Defendant contends that there was extensive evidence at the public hearing and in the letters to the Commission that the intersection of the proposed subdivision road, Daniels Hill Road, with Parmalee Hill Road was dangerous, narrow and had drainage and sight line problems. (Exhibit 1 pp. 15, 16, 18, 19, 20, 25, 35; Exhibits 12, 38, 39 and 40.) It is conceded that a subdivision application cannot be denied merely because it abuts a town road which is in inadequate condition. Reed v. Planning Zoning Commission, 12 Conn. App. 153, 159, affirmed,208 Conn. 431 (1988).
Defendant argues that a planning commission does have authority to require subdivision roads to have safe intersections with existing public highways.
In Forest Construction Co. v. Planning Zoning Commission,155 Conn. 669 (1967), it was held that a planning commission properly denied a subdivision application where the intersection of the subdivision road and the public highway created a dangerous intersection, and there was only single access to the public highway. There were also indications that the intersection with the public highway was dangerous owing to poor visibility and traffic congestion.
The commission in the Forest case denied the application citing CT Page 800 as its reasons, various potential traffic hazards and lack of protection from fire, panic and other dangers. The Commission also found that a dangerous intersection would be created by the subdivision road. The Connecticut Supreme Court held that the reasons stated by the commission in disapproving the preliminary subdivision plan were reasonably supported by the facts shown in the record before the commission. The members of the commission were entitled to consider any facts concerning the area, traffic, intersection and surrounding circumstances, which they had learned by personal observation. Further, their conclusion as to the effect of the use of the network of roads in the subdivision, as shown on the proposed plan, on traffic safety and hazard to the public are ones which they could reach without the aid of experts. Id., 675. Further, in Blakeman v. Planning Commission,152 Conn. 303 (1965), it was held that where the intersection of a subdivision road and the existing public highway was unsafe and had drainage problems, the planning commission properly denied the subdivision application. The Commission found that the road had a poor sight distance and the drainage created a hazardous condition. "The conditions which might make an intersection unsafe are many and varied. No one standard could ever be adopted to cover adequately all future cases. Judgment and experience must be applied in each instance, and an administrative agency such as the defendant may act upon its own knowledge and observation, as well as the evidence presented to it at a hearing." Id., 307.
Moreover, § 8-25 of the Connecticut General Statutes mandates subdivision regulations to provide that proposed streets must be in harmony with existing streets "especially in regard to safe intersections with such thoroughfares, and so arranged and of such width, as to provide an adequate and convenient system for present and prospective traffic needs."
On May 20, 1999, the Newtown Planning Zoning Commission disapproved the plaintiff's subdivision application. Various Commission members expressed concerns about accidents, sight lines and road paving prior to that date. (Exhibit 8 p. 3.) The Commission cited Subdivision Regulation 4.02.200 as a reason for its denial — implicit in citing said regulation, when coupled with the intent of Article I, is a finding that the intersection would be unsafe as constructed, and would require unnecessarily large expenditures to make it safe.
An examination of TLC Development, Inc. v. Planning ZoningCT Page 801Commission, supra, 527-534 reveals that the impact on off-site traffic was ruled not to be an appropriate reason for denying the application because the regulation cited only served as a basis for requiring a modification of a site plan, and therefore could not serve as the basis for the denial of an application for site plan approval. The case is distinguishable on its facts from the instant appeal.
The case of Sowin Associates v. Planning Zoning Commission, supra, 370-377 involved a commission's denial of a subdivision application to develop single family homes in a designated residential zone. The application was denied because of traffic congestion and safety concerns in the area of the proposed subdivision and an increase in congestion. The trial court sustained the appeal because the record did not support the commission's decision because the proposed site conformed to all of the town subdivision regulations. Citing TLC Development with approval, the trial court's decision was upheld because "the designation of a particular use of property as a permitted use establishes a conclusive presumption that such use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district." Id., 374. However, it would appear from a reading of that decision that there was no evidence in the record, other than a vague concern over traffic congestion, to support the Commission's safety concerns.
The plaintiff has also cited Reed v. Planning ZoningCommission, supra, 431-42. Reed involved a situation wherein the defendant planning and zoning commission denied the plaintiff's application to subdivide a certain parcel of land in the Town of Chester. The basis for the denial was that the existing town road was inadequate to provide safe access and egress to the proposed lots for either residents or emergency vehicles. The Supreme Court upheld the trial court's decision sustaining the appeal because the commission exceeded its authority as contained in the regulations. The Court distinguished both the Forest and Blakeman
cases by stating that those cases involved safety problems with the intersection of the proposed subdivision road and the town road. The Court opined that in Blakeman, the conclusions that the intersection of the proposed road with the existing road would have "poor sight distance," (2) surface drainage problems, and (3) an intersection on a slope, were reasonable conclusions to deny the application. It is interesting to note that the subdivision mandate in Reed requiring all applicants to convey to CT Page 802 the town the land necessary to widen an inadequate, improved town road was complied with by the applicant in the Reed case. Thus, the applicant had "fulfilled the requirements set forth in the regulations concerning public access." Reed v. Planning ZoningCommission, supra, 437. In the instant appeal, the subdivider had the option, pursuant to § 4.02.200, of entering into a contract with the town to improve the existing road to create a sufficiently safe condition to handle the traffic generated by the proposed subdivision. The plaintiff herein chose not to enter into a contract with the town unlike, by way of analogy, the developer in Reed. As Reed suggests, a subdivider cannot be mandated to improve existing town roads. However, a town does not have to appropriate money for repair of roads serving only a private interest. Canastota Knife Co. v. Newington Tramway Co.,69 Conn. 146, 166 (1897).
It would appear for an analysis of the aforementioned cases that since the instant appeal involves a permitted use within the Newtown Planning and Zoning Regulations, there is a conclusive presumption that said use does not adversely affect the district and precludes further inquiry into its effect on traffic, municipal services, property values, or the general harmony of the district. See TLC Development, Inc. v. Planning ZoningCommission, supra; Reed v. Planning Zoning Commission and SowinAssociates v. Planning Zoning Commission. However, the Commission may disapprove a subdivision plan based upon valid safety concerns with the intersection to be created by the proposed subdivision. See Forest Construction Co. v. Planning Zoning Commission, supra; and Blakeman v. Planning Commission, supra.
One of the reasons given by the Commission of poor sight lines is similar to one of the reasons approved by the Court in theBlakeman case. Unlike the safety concerns vaguely expressed in the Sowin Associate decision, the reasons given by the Commission in this appeal were reasonably supported by the facts shown in the record before the Commission (e.g. Exhibit 38 and 61). The Commission had the right to act upon the knowledge and information of its members as well as the evidence presented at the hearings. There is not one standard which can be applied to determine the safety of this particular intersection. The Commission stated a valid reason for disapproval which was supported by the record.
 III
CT Page 803 CONCLUSION
Based upon the foregoing reasons, the plaintiff's appeal is dismissed.
Dennis G. Eveleigh, Judge