WILFRED J. MEGIN *v.* ZONING BOARD OF APPEALS
OF THE TOWN OF NEW MILFORD
(AC 27947)

McLachlan, Gruendel and Pellegrino, Js.

Argued January 16—officially released March 25, 2008

*Max F. Brunswick*, for the appellant (plaintiff).

*Scott R. McCarthy*, for the appellee (defendant).

*Opinion*

GRUENDEL, J. In this certified zoning appeal, the plaintiff, Wilfred J. Megin, appeals from the judgment of the Superior Court affirming the decision of the defendant, the zoning board of appeals (board) of the town of New Milford (town), to uphold a cease and desist order.[1] The plaintiff's sole claim on appeal is

---

[1] In hearing the plaintiff's appeal from the decision of the zoning board of appeals, the Superior Court acts as an appellate body. See General Statutes § 8-8; see also *Par Developers, Ltd.* v. *Planning & Zoning Commission*, 37 Conn. App. 348, 353, 655 A.2d 1164 (1995) (noting zoning appeals in which Superior Court "reviewed the agency's decision in an appellate capacity").

that the board improperly permitted land use inspector Sarah Acheson to participate in its deliberations after the close of the public hearing, thereby violating his right to fundamental fairness. We affirm the judgment of the Superior Court.

At issue in this appeal is the storage of numerous motor vehicles and related debris on 64 Old Town Park Road, which is located in an R-40 residential zone of the town and at all relevant times was owned by the plaintiff. The town zoning regulations permit four uses in residential zones; use as a junkyard is forbidden.[2] The term "junkyard" is defined in part in the regulations as "any place of storage or deposit, whether in connection with a business or not, for two or more unregistered, used motor vehicles which are either no longer intended or in condition for legal use on the public highways and shall also include any place or storage or deposit for used parts of motor vehicles and old metals, iron, glass, paper, cordage and other waste materials which on any lot have an aggregate bulk equal to one automobile." New Milford Zoning Regs., § 15-010. Junkyards are permitted "as a special permit use" only in MV zones. Id., § 70-010 et al.

By letter dated October 2, 2000, zoning enforcement officer Kathy Castagnetta informed the plaintiff that "[i]t has been brought to my attention that you are storing unregistered and/or unroadable motor vehicles including a trailer on your property in the residential zone. . . . Please be advised that . . . these activities are not permitted in the residential zone in the [t]own. . . . You are hereby ordered to remove all unregistered and/or unroadable vehicles from the property within

---

[2] The four permitted uses in residential zones are: (1) single-family dwellings; (2) farms; (3) keeping or stabling of horses or livestock; and (4) home occupations. New Milford Zoning Regs., § 25-020.

15 days of receipt of this letter." When the plaintiff did not comply, a cease and desist order issued on December 7, 2004. That order stated in relevant part that "[a]s a result of a field inspection on December 3, 2004, I have determined that the following violation exists: (1) This property is being used as a junkyard. This condition violates chapter 25 of the [regulations], which does not permit a junkyard in a residential zone in the town. Junk vehicles, trailers and other debris must be removed from this property." Acheson signed the order.

In a written response, the plaintiff averred that "I am not running a junkyard, never have run a junkyard, have no intention of having a junkyard, have no certificate of business for a junkyard . . . ." By letter dated December 16, 2004, Acheson responded as follows: "According to the [regulations], your property is most definitely a junkyard. If I am wrong and the dozens of vehicles and trailers on the premises are registered, then I will lift the cease and desist order. However, until you can provide proof of registration this order will remain in effect. You do have the right to appeal it to the [board] within thirty days of receipt." The plaintiff filed such an appeal.

More than one month prior to the hearing on the plaintiff's appeal, Acheson prepared a memorandum for the board. That February 7, 2005 memorandum stated in relevant part: "There are dozens of unregistered vehicles and trailers, as well as a variety of construction materials and debris, on this residential lot. This fact is evident in the photos I have taken on December 3, 2004, January 7, 2005 and January 25, 2005. This is the worst junkyard situation that I have seen in a residential area. It is clearly a violation and no valid reason for the presence of this junk has been offered to the zoning office. . . . The negative impact on the neighborhood can be felt from speaking with neighbors who have

given up hope of ever seeing the vehicles removed. After years of living with these items within feet (in the worst case) of their backyards, they have resigned themselves to looking at the blight daily. . . . The amount of unregistered vehicles and other debris on site clearly classifies this site as a junkyard, which is not permitted in any zone other than MV motor vehicle district."[3]

The board held a hearing on the plaintiff's appeal on March 16, 2005. Both the plaintiff, who was represented by attorney Max F. Brunswick, and Acheson appeared. During the public hearing, the plaintiff claimed for the first time that he had a nonconforming use of the property.[4] He did not deny that he had numerous motor vehicles and related debris stored on the property. In response to a question from a board member, Acheson stated that "[t]here's absolutely no record of this [preexisting] use. If it were a farm and they had equipment there, then that might be a use that went along with the farm, but as far as I know, this property is not being used as a farm." The transcript shows that at the conclusion of the public hearing, the board commenced its "business meeting."[5] No explanation is provided for Acheson's presence at that meeting.

---

[3] The plaintiff has raised no issue, either before the Superior Court or this court, with respect to Acheson's February 7, 2005 memorandum to the board.

[4] The record includes half a dozen letters from the plaintiff to Acheson or the board prior to the March 16, 2005 hearing concerning the use of his property. None mention any preexisting use. We further note that, in this appeal, the plaintiff has not raised any claim as to that allegedly preexisting use.

[5] It is unclear from the record whether the plaintiff and his attorney left before or after the close of the public hearing. The transcript reveals that during the public hearing, Acheson stated that "I didn't know he was leaving," at which point board chairwoman Joanne Chapin stated, "[w]ell, are we going to close this?" Board member Janice Dobson responded, "[l]et's close it, and we can talk about it in the business meeting," and a motion to close the public hearing was made and approved by all board members.

Acheson made a total of four remarks during that meeting. First, she stated that "I think [the plaintiff is] saying it is a junkyard but it's preexisting." Second, in response to a question about how many vehicles were on the property, Acheson replied, "dozens, dozens." Third, Acheson noted that the issue of preexisting use "came up tonight, by the way." Finally, Acheson stated that the plaintiff's property was "not even a farm." At the conclusion of the meeting, the board voted unanimously to uphold the cease and desist order. The plaintiff appealed from that decision to the Superior Court, which rendered judgment dismissing his appeal.

On appeal to this court, the plaintiff claims that Acheson's participation in the business meeting violated his right to fundamental fairness.[6] We generally employ a deferential standard of review to the actions of a zoning board. See, e.g., *Wing* v. *Zoning Board of*

---

[6] Although the plaintiff at times references a "due process" violation, he acknowledges in his appellate brief that "[w]hat is required is the common-law right to fundamental fairness" and argues that the administrative proceeding at issue "was fundamentally unfair." That common-law right is not coextensive with constitutional due process. As our Supreme Court explained: "The right to fundamental fairness in administrative proceedings encompasses a variety of procedural protections, including the right to adequate notice that is at issue in this case. . . . In a number of administrative law cases decided after [*Board of Regents* v. *Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972)], we have characterized these procedural protections as 'due process' rights. . . . Although the 'due process' characterization, at first blush, suggests a constitutional source, there is no discussion in these cases of a property interest in terms of constitutional due process rights. These decisions are, instead, based on a line of administrative law cases and reflect the development, in Connecticut, of a common-law right to due process in administrative hearings. Although the facts of the present case do not require us to explore its boundaries, this common-law right is not coextensive with constitutional due process. . . . Therefore, to eliminate any further confusion, we will discontinue the use of the term 'due process' when describing the right to fundamental fairness in administrative proceedings." (Citations omitted.) *Grimes* v. *Conservation Commission*, 243 Conn. 266, 273 n.11, 703 A.2d 101 (1997). In accordance with that precedent, we likewise describe the plaintiff's claim as one invoking his right to fundamental fairness.

*Appeals*, 61 Conn. App. 639, 643, 767 A.2d 131, cert. denied, 256 Conn. 908, 772 A.2d 602 (2001). "[C]ourts are not to substitute their judgment for that of the board, and . . . the decisions of local boards will not be disturbed as long as honest judgment has been reasonably and *fairly* made after a full hearing . . . ." (Emphasis added; internal quotation marks omitted.) *Jaser* v. *Zoning Board of Appeals*, 43 Conn. App. 545, 547, 684 A.2d 735 (1996). In the present case, the plaintiff challenges not the ultimate decision of the board but, rather, the fundamental fairness of the board's hearing. The question of whether the board violated the plaintiff's right to fundamental fairness in that administrative proceeding presents a question of law over which our review is plenary.[7] Cf. *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 273, 931 A.2d 290 (2007) (issue of whether court violated procedural due process rights is question of law over which review is plenary).

"While proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . they cannot be so conducted as to violate the fundamental rules of natural justice." (Citations omitted.) *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 207, 355 A.2d 21 (1974). "Fundamentals of natural justice require that there must be due notice of the hearing, and at the hearing no one may be deprived

---

[7] In their respective appellate briefs, neither party to this appeal has provided a standard of review applicable to an alleged violation of the right to fundamental fairness in the administrative proceeding. The decisions addressing such a claim do not expressly state the applicable standard of review. See, e.g., *Grimes* v. *Conservation Commission*, 243 Conn. 266, 703 A.2d 101 (1997); *Pizzola* v. *Planning & Zoning Commission*, 167 Conn. 202, 355 A.2d 21 (1974); *Daniel* v. *Zoning Commission*, 35 Conn. App. 594, 645 A.2d 1022 (1994); *Norooz* v. *Inland Wetlands Agency*, 26 Conn. App. 564, 602 A.2d 613 (1992); *Brookfield Plaza Ltd. Partnership* v. *Zoning Commission*, 21 Conn. App. 489, 574 A.2d 825 (1990). At the same time, the substance of those decisions indicates that the court's review in each instance was plenary.

of the right to produce relevant evidence or to cross-examine witnesses produced by his adversary . . . . Put differently, [d]ue process of law requires that the parties involved have an opportunity to know the facts on which the commission is asked to act . . . and to offer rebuttal evidence." (Citations omitted; internal quotation marks omitted.) *Grimes* v. *Conservation Commission*, 243 Conn. 266, 274, 703 A.2d 101 (1997). In short, "[t]he conduct of the hearing must be fundamentally fair." *Bancroft* v. *Commissioner of Motor Vehicles*, 48 Conn. App. 391, 408, 710 A.2d 807, cert. denied, 245 Conn. 917, 717 A.2d 234 (1998); see also R. Fuller, 9 Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 20:14, p. 587.

While "zoning boards and commissions are entitled to technical and professional assistance in matters which are beyond their expertise . . . and that such assistance may be rendered in executive session," our Supreme Court has held that "[t]he use of such assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." (Citation omitted.) *Pizzola* v. *Planning & Zoning Commission*, supra, 167 Conn. 208. In *Norooz* v. *Inland Wetlands Agency*, 26 Conn. App. 564, 602 A.2d 613 (1992), this court discussed in detail that aspect of local administrative procedure. Echoing *Pizzola*, the court first noted that "[o]ur law clearly prohibits the use of information by a municipal agency that has been supplied to it by a party to a contested hearing on an ex parte basis." Id., 569. It then discussed a number of cases from our Supreme Court that, in contrast to that general rule, "have approved the consideration of information by a local administrative agency supplied to it by its own technical or professional experts outside the confines of the administrative hearing." Id., 570,

citing *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 184–85, 286 A.2d 299 (1971); *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 77–78, 282 A.2d 900 (1971); *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 249–51, 230 A.2d 595 (1967); *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 420–21, 143 A.2d 639, cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121 (1958). The court emphasized that "[i]n each of these cases, the extrarecord information received by the agency from its technical consultant was not sufficient reason to invalidate the administrative decision." *Norooz* v. *Inland Wetlands Agency,* supra, 571.

Turning to the controversy before it, the *Norooz* court concluded that the "broad exception to the general prohibition on communications received by administrative agencies outside the confines of the hearing. . . . needs further analysis before it should be applied." Id., 571. The court discussed the proper use of extrarecord analysis of evidence already in the record, stressing a focus on "the nature and content of the extrarecord information relied on by an administrative agency . . . ." (Citation omitted.) Id., 573. It then concluded: "The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." Id., 573–74.

Finally, the *Norooz* court applied that inquiry to the facts at hand. First, the court noted that "[n]either the trial court nor the plaintiffs have identified any fact or evidence relied on in those [communications] which was not already evidence of record in the administrative proceedings." Id., 574. Second, the court's review of the record of the administrative proceedings indicated

that the communications by the agency's technical or professional experts outside the confines of the administrative hearing were "limited to a review of, a comment on and an opinion concerning evidence of record." Id. In addition, the court stressed that there was "no indication or suggestion in either [communication] that facts not already of record in the lengthy administrative proceeding were considered by [the town engineers] in forming [their] conclusions and recommendations to the agency." Id. As a result, the court concluded that the agency properly relied on those ex parte communications. Id.

In the present case, it is undisputed that Acheson participated in the board's business meeting following the close of the public hearing on the plaintiff's appeal. Without providing any Connecticut authority to support his proposition, the plaintiff asks us to hold that Acheson's participation therein constituted a per se violation of the right to fundamental fairness. We decline that invitation. Instead, consistent with the aforementioned precedent, we must examine the record to determine whether Acheson's participation in the board's business meeting in this case amounted to a violation of the plaintiff's right to fundamental fairness.[8]

Significantly, Acheson did not offer any fact or evidence at that meeting that was not already evidence of record. Her statement that "I think [the plaintiff is] saying it is a junkyard but it's preexisting" is an accurate, if not verbatim, description of the plaintiff's testimony at the public hearing. Her statement that "dozens" of

---

[8] We neither condone nor encourage the practice of permitting a party to an administrative appeal, even one that provides technical or professional assistance, to participate in the deliberations of an administrative agency. Even if that participation ultimately is harmless, it raises the specter of impropriety. For that reason, the prudent course is to prohibit all parties to an administrative appeal from appearing at an agency's executive session.

vehicles were on the property finds support in both her December 16, 2004 letter to the plaintiff that references "the dozens of vehicles and trailers on the premises" and her February 7, 2005 memorandum that states that "[t]here are dozens of unregistered vehicles and trailers, as well as a variety of construction materials and debris, on this residential lot." Acheson's statement is also supported by the photographs of the plaintiff's property that were furnished to the board, which depict numerous vehicles thereon. Furthermore, at no stage of the proceedings did the plaintiff refute or deny that allegation. Our thorough review of the record indicates that Acheson's observation that the preexisting use issue "came up tonight, by the way" is correct; at no time prior to the March 16, 2005 hearing did the plaintiff raise that issue before either the board, the zoning enforcement officer or Acheson. Finally, Acheson's statement that the property was "not even a farm" simply repeats her testimony at the public hearing that "as far as I know, this property is not being used as a farm." Thus, as in *Norooz*, the communications made by Acheson outside the confines of the public hearing were limited to a review of, and a comment on, evidence of record. See also *Brookfield Plaza Ltd. Partnership v. Zoning Commission*, 21 Conn. App. 489, 494, 574 A.2d 825 (1990) (chairman's report "merely a summary of his personal observations of the area and of what had transpired at the public hearing"). Indeed, at oral argument before this court, counsel for the plaintiff was asked precisely what statement by Acheson at the business meeting was new evidence, and counsel conceded, "I can't show what she said was new evidence."

Although we are mindful that the use of professional assistance in an executive session "cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to

offer evidence in explanation or rebuttal"; *Pizzola* v. *Planning & Zoning Commission,* supra, 167 Conn. 208; the record indicates that Acheson provided no additional information to the board during its business meeting. As such, her participation in the meeting did not violate the plaintiff's right to fundamental fairness.

Furthermore, even if we were to conclude that Acheson's participation in the board's business meeting was improper, we would still conclude that it did not amount to a violation of the right to fundamental fairness. Although the plaintiff insists that "there is no such thing" as a harmless deprivation of that right, he is mistaken. It is well settled that "[a]n ex parte communication raises a rebuttable presumption of prejudice. Once the plaintiff shows that an improper ex parte communication has occurred, the burden of showing that the communication was harmless shifts to the party seeking to uphold the validity of the zoning commission's decision." *Daniel* v. *Zoning Commission,* 35 Conn. App. 594, 597, 645 A.2d 1022 (1994); see also *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 480, 562 A.2d 1093 (1989) (same); *Connecticut Natural Gas Corp.* v. *Public Utilities Control Authority,* 183 Conn. 128, 139, 439 A.2d 282 (1981) (inclusion of improper evidence in record on which decision based does not by itself invalidate decision; use of improper evidence requires remand only if party has affirmatively shown substantial prejudice); *First Hartford Realty Corp.* v. *Plan & Zoning Commission,* 165 Conn. 533, 545, 338 A.2d 490 (1973) ("[e]ven if the reception of the post-hearing evidence was illegal . . . it was at most harmless error because the action of the commission is adequately supported by assigned reasons not based on the allegedly tainted evidence"); *Kyser* v. *Zoning Board of Appeals,* supra, 155 Conn. 251 ("plaintiffs were in no way prejudiced by what happened during the executive session"); R. Fuller, 9B Connecticut Practice Series: Land Use Law and Practice (3d Ed. 2007) § 47:4,

pp. 54–55 ("[t]here must be a showing of substantial prejudice resulting from illegal receipt of the evidence by the agency in order to obtain a reversal of its decision"). As this court recently observed, "[w]e know of no rule of law that requires a judgment or administrative decision automatically to be set aside because of the receipt or preclusion of a single piece of evidence in violation of the requirements of due process. Even in criminal cases, the law inquires into whether the taint resulting from the improper admission was harmful in light of the record as a whole. . . . The same rule applies to administrative hearings . . . and to zoning cases." (Citations omitted.) *Crabtree Realty Co.* v. *Planning & Zoning Commission*, 82 Conn. App. 559, 571, 845 A.2d 447, cert. denied, 269 Conn. 911, 852 A.2d 739 (2004).

We conclude that the defendant has met its burden of establishing that Acheson's participation in the board's business meeting was harmless. She provided no additional information to the board during its business meeting. Each of her four statements was based on evidence already in the record. Accordingly, the plaintiff's right to fundamental fairness was not violated in the present case.

The judgment is affirmed.

In this opinion the other judges concurred.