SEDIGHEH NOROOZ ET AL. *v.* INLAND WETLANDS AGENCY OF THE TOWN OF WOODBURY ET AL.
(10148)

DUPONT, C. J., O'CONNELL and LAVERY, Js.

Argued December 4, 1991—decision released February 4, 1992

*Maureen Danehy Cox,* with whom, on the brief, was *William F. Holland,* for the appellant (named defendant).

*David B. Harting,* for the appellees (plaintiffs).

DUPONT, C. J. The named defendant[1] Woodbury inland wetlands agency appeals from the decision of the trial court sustaining the plaintiffs'[2] appeal from the denial of their permit application by the inland wetlands agency. The trial court concluded that the agency decision must be set aside because it was based on extrarecord information, that is, material not presented to the agency at a public hearing. The material involved the reports of an engineering consultant retained by the agency to provide it with technical assistance by reviewing and commenting on the plaintiffs' application. We conclude that it was proper for the agency to rely on this information in arriving at its decision, notwithstanding the fact that neither the reports nor the engineering consultant was available at the public hearing for comment or cross-examination by the plaintiffs. We, therefore, reverse the judgment of the trial court.

The following facts are relevant to this appeal. The plaintiffs are the owners of 31.38 acres of undeveloped property located in the town of Woodbury. They sought to subdivide the property into eight lots suitable for

---

[1] Also named as defendants were the chairman and secretary of the Woodbury inland wetlands agency, the Woodbury town clerk, and the commissioner of the Connecticut department of environmental protection. None of these defendants is involved in this appeal.

[2] This action was brought by the named plaintiff and Pouran Aleali. Both are parties to this appeal.

single home residential development. The development necessitates the construction of approximately 900 feet of roadway. In the process of the proposed construction, one noncontiguous wetland would be filled in, portions of the road would be located within a one hundred foot setback from existing wetlands, and two driveways would be placed over a watercourse to service two of the proposed subdivision lots.

The named defendant is the duly designated municipal agency entrusted with the enforcement of the Wetlands and Watercourses Act, General Statutes §§ 22a-28 through 22a-45. In order to proceed with the proposed subdivision, it was necessary for the plaintiffs to obtain a permit from the agency, among other things, to locate the road near the wetlands, to fill in a portion of the wetlands, and to place driveways over a watercourse. Accordingly, on November 7, 1989, the plaintiffs filed an application with the agency seeking a permit to perform the aforementioned construction.

Thereafter, the agency set the matter down for a public hearing on January 8, 1990. The revised plans that were submitted to the agency at the January 8 hearing were somewhat different from plans that had been submitted with the plaintiffs' prior applications.[3] Due to the fact that there were changes in the plans, the agency continued the public hearing to January 22, 1990, to allow LandTech Consultants, Inc. (LandTech), the town engineers, to review and comment on the new plans and calculations.

At the hearing on January 22, 1990, it was determined that the agency had not received a response from

---

[3] The plaintiffs had filed three previous applications with the agency involving the same property. Two of the applications were withdrawn, and the third application was denied. These prior applications are not involved in this appeal.

LandTech concerning its comments on the plans and calculations. During the course of this hearing, concern was raised about water draining from an adjacent property causing a gully to wash down sediment. The public hearing was then continued to February 13, 1990, to allow the plaintiffs to have a water design developed and to give LandTech time to review the revisions.

LandTech submitted a letter to the agency dated January 26, 1990, that reviewed the plaintiffs' application and their revised plans and calculations. At the February 13, 1990 meeting, the plaintiffs submitted a letter from their engineer in response to comments received by the agency from LandTech. In addition, the plaintiffs submitted their revised drainage calculations dated February 13, 1990, and revised plans dated February 13, 1990. The revised plans and calculations were offered by the plaintiffs in an attempt to resolve all the concerns that had been raised by Land-Tech and the agency.

Because new plans and calculations were presented at the hearing, the agency determined that the matter would be tabled until this information was forwarded to LandTech for review and comment. No further public hearings were scheduled by the agency. The agency next discussed the application at its meeting on February 26, 1990. At this time, the agency disclosed that it had received a letter from LandTech dated February 23, 1990, which reviewed the plaintiffs' revised plans and drainage calculations and the impact of the plans and calculations on the wetlands. The agency's consideration of the application was continued until the agency's meeting of March 12, 1990, to allow the agency to review this new information from Land-Tech. On March 12, the agency received another letter (dated March 9) from LandTech stating that LandTech had reviewed various documents submitted in support of the subdivision application and concluding that its

review of those materials did not alter the opinions expressed in its February 23 letter to the agency.

At the March 12, 1990 meeting, and without holding any further public hearings or requesting comments from the plaintiffs on LandTech's February 23 and March 9 letters, the agency voted to deny the application for an inland wetlands permit to construct the subdivision. The agency expressly relied on the information supplied to it by LandTech in the February 23 letter as a basis for the denial of the application.[4] After the plaintiffs successfully challenged the use of the February 23 letter by the agency in the trial court, the agency appealed to this court.

[4] The Agency denied the application for the following reasons: "1. Section 6.1.e.i—the proposed activity—the construction of two hundred linear feet of roadway within a wetland, and two driveways will lead to the degradation of surface water and water quality by alterations in the subsurface flows within wetlands resulting from the damming effect of driveway and road construction. (Town engineer's letter of 2/23/90)

"2. Section 6.1.e.i—the proposed activity will reduce the wetland and watercourse quality from the accumulation of deicing sands. The application includes a plunge pool, but its capacity cannot be determined from the detail provided. (Town engineer's letter of 2/23/90)

"3. Section 6.1.e.i.—The proposed construction of the detention facility has the potential for the discharge of significant quantities of sediment into the wetland and watercourse. The application does not propose a mitigation strategy including erosion controls and construction sequencing. (Town engineer's letters of 2/23/90, 1/26/90 and 11/29/90)

"4. Section 6.1.e.i.—The proposed activity which includes the construction of the roadway and driveways within the wetlands fails to adequately control the discharge of sediment on the site. The plan indicated sediment barriers at the top of slopes rather than at the base, and proposed fill sections within the wetlands with no filter barriers shown.

"5. Section 6.1.e.i–6.1.e.vii.—The alternative to wetlands disturbance for the construction of driveways to lots 7 and 8 has not been addressed by the applicant."

In addition, the following was placed in the agency's minutes in connection with the denial of the application: "Reason for denial by all four members: The Agency felt that the consulting engineer (LandTech Consultants, Inc.) had addressed a number of concerns throughout the review period, and that the applicant hadn't adequately satisfied and addressed these concerns."

It is beyond dispute that a municipal administrative agency, "composed of laymen, is entitled to technical and professional assistance regarding matters beyond its expertise. . . . This entitlement is necessarily implied in the legislation creating the [agency] and setting forth its duties." (Citations omitted.) *Spero* v. *Zoning Board of Appeals,* 217 Conn. 435, 444, 586 A.2d 590 (1991); *Frito-Lay, Inc.* v. *Planning & Zoning Commission,* 206 Conn. 554, 571, 538 A.2d 1039 (1988). The issue presented by this appeal, however, is whether such assistance may be provided to a local administrative agency outside the confines of the hearing in a manner insulated from review, comment or cross-examination by a party to the proceeding.

Our law clearly prohibits the use of information by a municipal agency that has been supplied to it by *a party* to a contested hearing on an ex parte basis. "While proceedings before [municipal agencies] are informal and are conducted without regard to the strict rules of evidence; *McCrann* v. *Town Plan & Zoning Commission,* 161 Conn. 65, 77, 282 A.2d 900 [1971]; *Parsons* v. *Board of Zoning Appeals,* 140 Conn. 290, 292, 99 A.2d 149 [1953]; nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. *Miklus* v. *Zoning Board of Appeals,* 154 Conn. 399, 406, 225 A.2d 637 [1967]. Due process of law requires that the parties involved have an opportunity to know the facts on which the [agency] is asked to act, to cross-examine witnesses and to offer rebuttal evidence. The [agency] could not properly consider additional evidence submitted by [a party] after the public hearing without providing the necessary safeguards guaranteed to [an opposing party] and to the public. 'This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal. *Waddell* v. *Board of Zoning Appeals,* 136 Conn. 1, 9, 68 A.2d 152 [1949].

Not to do so would deny those [supporting or] opposing the application the right to be fully apprised of the facts on which the [agency] is asked to act. *Parish of St. Andrew's Church* v. *Zoning Board of Appeals,* 155 Conn. 350, 358, 232 A.2d 916 [1967]; *Wunder* v. *Macomber,* 34 Misc. 2d 281, 290, 228 N.Y.S.2d 552 [1962]; 2 Rathkopf, Law of Zoning & Planning (3d Ed.), p. 44-2.' *Wasicki* v. *Zoning Board,* 163 Conn. 166, 172–73, 302 A.2d 276 [1972]." *Pizzola* v. *Planning & Zoning Commission,* 167 Conn. 202, 207–208, 355 A.2d 21 (1974).

Thus, the technical and professional assistance to which a municipal administrative agency is entitled does not include " 'the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal.' " *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 478, 562 A.2d 1093 (1989); *Pizzola* v. *Planning & Zoning Commission,* supra, 208.

In contrast to this well settled rule, however, there are a number of cases which have approved the consideration of information by a local administrative agency supplied to it by its own technical or professional experts outside the confines of the administrative hearing. In *Yurdin* v. *Town Plan & Zoning Commission,* 145 Conn. 416, 420–21, 143 A.2d 639, cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121 (1958), the local administrative agency conferred in executive session following the public hearing with the town planning director and the town planning technician in order to obtain an explanation of certain evidence in the record. Similarly, in *Kyser* v. *Zoning Board of Appeals,* 155 Conn. 236, 249–51, 230 A.2d 595 (1967), two municipal officials were called into the agency's executive session to explain certain discrepancies in the record. Likewise, in *McCrann* v. *Town Plan & Zoning Com-*

*mission,* 161 Conn. 65, 77–78, 282 A.2d 900 (1971), the agency met in executive session with its planning consultant who had previously spoken in favor of the site plan being considered by the municipal agency. Finally, in *Holt-Lock, Inc.* v. *Zoning & Planning Commission,* 161 Conn. 182, 184–85, 286 A.2d 299 (1971), the local agency considered a report received subsequent to the public hearing that was submitted to it by its outside planning consultant at the request of the local agency. In each of these cases, the extrarecord information received by the agency from its technical consultant was not sufficient reason to invalidate the administrative decision.

Although *Yurdin* and its progeny, recently cited with approval in *Spero* v. *Zoning Board of Appeals,* supra, create a broad exception to the general prohibition on communications occurring outside the confines of an administrative hearing regarding the subject of the hearing where the communication comes from the administrative agency's technical consultant, they do so against a backdrop of a failure of appellants to show a violation of due process. In *Yurdin, Kyser, McCrann* and *Holt-Lock,* there was no evidence in the record that the extrarecord information had any effect upon the administrative decision. Without a showing of such prejudice, the courts in those cases were not called on to explore the limits, if any, to the exception afforded to extrarecord communications provided to a municipal agency by its technical experts. We, therefore, conclude that the broad exception to the general prohibition on communications received by administrative agencies outside the confines of the hearing as discussed in *Yurdin* and its progeny needs further analysis before it should be applied. See *Blaker* v. *Planning & Zoning Commission,* supra.

Our case law has, in fact, placed certain constraints on the extrarecord use of information supplied to

municipal agencies by their technical and professional consultants. Specifically, in *Connecticut Natural Gas Corporation* v. *PUCA,* 183 Conn. 128, 439 A.2d 282 (1981), the issue was whether the administrative agency had properly relied on a report of one of its employees (referred to as the Rothschild report) because it was submitted after the close of the contested hearing. Rather than broadly approving the use of extrarecord information from one of its technical consultants, the court's detailed analysis of the extrarecord communication turned instead on the *content* of the information received by the agency outside the confines of the hearing. Thus, the court approved of agency use of "those parts of the Rothschild report . . . which consist of analysis or summary of record evidence or which point out inconsistencies in the plaintiff's witnesses' testimony or the lack of support in the record for some of their opinions" specifically because they *"are not evidence"* and because "[t]herefore the plaintiff had no right to rebut those parts or to cross-examine Roth-schild about them." (Emphasis added.) Id., 138. The court, however, found that the agency's reliance on certain information and analysis in the Rothschild report may have been improper since it seemed to rely on factual material that was never read into the record. Id., 138–39.

This distinction between the proper use of extrarecord analysis of evidence already in the record and the improper use of such evidence recently provided provided the basis for the analysis in *Levinson* v. *Board of Chiropractic Examiners,* 211 Conn. 508, 560 A.2d 403 (1989). There, the court considered whether an administrative tribunal was required to take official notice of its own specialized knowledge and notify the parties of the particular expert knowledge on which it intended to rely in deciding the matter before it. Distinguishing between the "process of

proof" and the "evaluation of evidence," the court agreed with the following analysis: " 'The difference between an administrative tribunal's use of non-record information included within its expert knowledge, as a substitute for evidence or notice, and its application of its background in evaluating and drawing conclusions from the evidence that is in the record, is primarily a difference of degree rather than of kind. In principle, reliance upon the examiner's knowledge in the process of proof is permissible only within the confines of official notice, whereas the examiner's use of his experience in evaluating "proof" that has been offered is not only unavoidable but, indeed, desirable; . . .' E. Gellhorn, 'Rules of Evidence and Official Notice in Formal Administrative Hearings,' 1971 Duke L.J. 1, 43 (1971)." Id., 532–33.

This refined analysis, which focuses on the nature and content of the extrarecord information relied on by an administrative agency, was recently used by this court in *Brookfield Plaza Limited Partnership* v. *Zoning Commission,* 21 Conn. App. 489, 574 A.2d 825 (1990). The *Brookfield Plaza* case involved the propriety of the use of a report by the administrative agency that was prepared by its chairman. There, we concluded that "the common thread [running through our case law] is that it is unfair for either the applicants or the opponents to submit *additional evidence* to the [agency] without giving the other party an opportunity to respond to this additional evidence." (Emphasis in original.) Id., 495.

We must determine whether the specific material involved in this case, namely, the February 23, 1990 and March 9, 1990 letters from LandTech to the agency were properly considered by the agency. The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on nonrecord information provided by its technical or professional experts,

is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter.

Neither the trial court nor the plaintiffs have identified any fact or evidence relied on in those letters which was not already evidence of record in the administrative proceedings. Our review of those documents and the record of the administrative proceedings, moreover, discloses that both letters are limited to a review of, a comment on and an opinion concerning evidence of record. There is no indication or suggestion in either letter that facts not already of record in the lengthy administrative proceeding were considered by Land-Tech in forming its conclusions and recommendations to the agency. The agency properly relied on these documents, and the trial court should not have sustained the plaintiffs' appeal.

The judgment is reversed and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.