[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
1. Procedural Background
This is an appeal from the decision of the City of New Haven Plan Commission in which an inland wetlands permit was granted to conduct a regulated activity within the meaning of the Inland CT Page 1719 Wetlands and Water Course Act, CGS 22A-36 et seq., relating to 4.4 acres of commercial development within the City of New Haven.
2. Aggrievement
The evidence at trial clearly demonstrated that the plaintiff is, and has been at all relevant times to these proceedings, the owner of property at 1154 Quinnipiac Avenue. The plaintiff's property directly abuts the property involved in the Commission's decision. Accordingly the plaintiff is aggrieved by the decision of the Commission because she is a person "owning land which abuts or is within a radius of 90 feet" of land involved in the decision of the Commission in accordance with the statutory requirement. CGS 22A-43(a). The statutory aggrievement is present. Cole v. Planning Zoning Commission, 30 Conn. App. 511 (1993).
3. Issue
Although the appellant states the issue in several different ways and with slight variations, the substance of her complaint is that the Commission relied in its decision on ex parte evidence requested of and received from the applicant during the period subsequent to the close of the public hearing and prior to the Commission's vote.
4. Factual Background
On or about April 13, 1993, the defendant Bernard Pellegrino, as applicant, submitted an application to the defendant City Plan Commission to conduct regulated activities in an area of inland wetland and water courses located on 40.4 acres of land owned by the defendant S. Rudy Gato and situated in the City of New Haven within the Commission's jurisdiction.
The application includes the introduction of 32.3 acres of impervious cover to the 40.4 acres site, the excavation of approximately 57,969 cubic yards of material from the site and the deposit of approximately 223,281 cubic yards of fill to construct 367,412 gross square feet of commercial space (Record Exhibits b, m, o, z, vv).
The application was reviewed at a public hearing on May 19, 1993. At the public hearing Pellegrino introduced the "preferred alternative" development plan which was different than the plan originally submitted with the application with relation to the CT Page 1720 wetlands treatment and zoning aspects (Record bb and cc). The Commission engaged an outside consultant to review drainage calculations and other features relating to the application. At the public hearing, members of the public including neighbors expressed concern and presented their opinions concerning possible effects of the proposed development on observed wildlife, and storm water maintenance. Because of the amount of impervious cover proposed, neighbors expressed concerns relating to water runoff from cars and possible degradation of the River. (Record Exhibit cc, pp. 73-124). The public hearing was closed on May 19, 1993. At the public hearing the chairman announced a deadline of 5:00 p. m. on June 1, 1993 for submission of additional written public comments relating to the application. The Department of Environmental Protection submitted extensive written comments relating to the application which was received by the City Plan Department on June 1, 1993.
Subsequent to the close of the public hearing, the defendant Commission through the acting director of the City Plan Department requested additional information from Pellegrino relating to the application (Record Exhibit y). Revised plans, calculations and reports relating to the application were submitted by or on behalf of the applicant on June 3, 1993, (Record Exhibits dd, a, ee and ff) and July 6, 1993, (Record Exhibits qq and pp).
The Commission met to consider and vote on the application on July 21, 1993 (Record Exhibit ww). At the July 21, 1993 meeting the Commission, after the close of the public hearing and subsequent to the public comment deadline set by the Commission, entertained comments relating to the application from members of the public and responses from representatives of the applicant (Record Exhibit ww). On July 21, the Commission voted to approve the application with conditions. Notice of the decision was published on July 29, 1993 in the New Haven Register. The plaintiff took this appeal in a timely manner.
5. Discussion
Connecticut law is clear, as claimed by the plaintiff/appellant, that the Commission may not accept additional information from the applicant after the close of the public hearing. As the Supreme Court has stated in Pizzola v. Planning 
Zoning Commission, 167 Conn. 202 (1974):
"While proceedings before Zoning and Planning CT Page 1721 Boards and Commissions are informal and are conducted without regard to the strict rules of evidence [citations omitted] nevertheless, they cannot be so conducted as to violate fundamental rules of natural justice. [citations omitted] Due process of law requires that the parties involved have an opportunity to know the facts on which the Commission is asked to act, to cross examine witnesses and to offer rebuttal evidence. The Commission cannot properly consider additional evidence submitted by the applicant after the public hearing without providing the necessary safeguards guaranteed to opponents of the application and to the public. `This means a fair opportunity to cross examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal.' [citations omitted] Not to do so would deny those opposing the application the right to be fully apprised of the facts upon which the Board is asked to act." Pizzola at 207.
However, the court has also held again in Pizzola
 "It is true, as the defendants argue, that zoning boards and commissions are entitled to technical and professional assistance in matters which are beyond their expertise [citations omitted] and that such assistance may be rendered in executive session. [citations omitted] The use of such assistance, however, cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opponent an opportunity to know the information and to offer evidence in explanation or rebuttal." Pizzola at 208.
Defendants would argue that the case is controlled by Holt-Lock, Inc. v. Zoning Planning Commission, 161 Conn. 182 (1971).
There the court held
"The findings of fact, which must stand, with CT Page 1722 respect to the report from Technical Planning Associates are: (1) Technical Planning Associates were consultant to the defendant Commission, not opponents of the applicant's application. (2) The material requested of Technical Planning Associates was not evidence for or against the application beyond what the Commission had from its own knowledge or adduced at the public hearing on February 13, 1968. (3) The consideration of the reports was solely to aid the defendant Commission in determining what conditions it might impose on the granting of the plaintiff's application if it did not grant it." Holt-Lock at 185.
Factually the case before the court falls between Pizzola and Holt-Lock, Inc. The court finds that post hearing information was indeed requested from the applicant but that it was requested by the Commission's technical staff and the City Plan Department and was provided to the technical staff. Subsequent to the receipt of the information by the technical staff, a draft report was provided to the Commission. The City Plan Department was a neutral technical advisor to the Commission rather than a proponent or opponent of the application. For this reason, the case has certain similarities to the procedures which were approved in Holt-Lock, Inc.
Conversely, the staff clearly requested information from the applicant. Detailed information and reports were provided to the City Plan Department and/or its acting director Donna Hall after the close of the public hearing. The court recognizes that Ms. Hall is a member of the staff and not a member of the Commission.
In Norooz v. Inland Wetlands Agency, 26 Conn. App. 564 (1992), the Appellate Court considered an appeal where:
 "The material involved the reports of an engineering consultant retained by the agency to provide it with technical assistance by reviewing and commenting on the plaintiff's application. We conclude that it was proper for the agency to rely on this information in arriving at its decision, notwithstanding the fact that neither the report nor the engineering consultant was available at the CT Page 1723 public hearing for comment or cross examination by the plaintiffs." Norooz at 565.
Surprisingly the precise question before this court i.e. the submission of information by the applicant to staff following the close of the public hearing does not appear to have been clearly presented in any Appellate or Supreme Court case. Nevertheless, a fair reading of Pizzola, Holt-Lock, Inc. and Norooz is that the Commission may rely on independent work of its staff and consultants following the close of the public hearing. The key clearly appears to be that the post hearing information be provided by a consultant or staff member with no stake in the outcome. However, the court holds, when, as here, the Commission staff engages in ex parte communications with others and formulates opinions which are bolstered or supported by information provided by the applicant it makes no difference whether the applicant's information is provided to staff or directly to the Commission or its members. In either case it would appear that those who are opposing the application have been denied their rights to be fully apprised of the facts upon which the Board is acting. This right is protected by our law. Pizzola at 207.
For the foregoing reasons, the appeal of the plaintiff is sustained and the action of the City Planning Commission of the City of New Haven in granting the permit is reversed.
Further the court notes that the public hearing was closed on May 19 although the period for public comment was extended until June 1. It is essentially uncontested that the applicant provided substantial information to the staff not only after May 19, but also after June 1. Consequently, the court is not called upon to rule on the significance of the extension of time for public comment. Nevertheless, the rationale of the cases that prohibit ex parte communication after the close of the public hearing is that opponents have the right to see and comment on the evidence being considered. While the issue need not be decided in the case before the court, it appears that the practice of extending the written public comment period beyond the close of public hearing could be expected to create conflicts with the philosophy expressed by the Supreme Court in Pizzola.
The court also need not decide whether the action of Commission Chairman David Greenberg in "entertaining questions from those present" at the July 21, 1993 meeting would have imperiled CT Page 1724 the approval of this application. The record in this case would appear to indicate that the questions and answers were relatively harmless. Nevertheless, in view of the clear prohibition on the receipt of evidence following the close of public hearing from any source, other than limited information from the Commission's own technical staff, it would appear that the better practice would be to refuse to allow comment or questions on pending applications during the period between the close of the public hearing and the vote of the Commission.
By The Court ________________ Kevin E. Booth