[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff Mercury Fuel Service, Inc. appeals the decisions of the defendant plan and zoning commission of the town of Newington denying the plaintiffs applications for a special exception and site plan approval for the development of its property in that town. The commission acted pursuant to General Statutes § 8-3,8-3c and applicable plan and zoning regulations of the town. The plaintiff appeals pursuant to § 8-8. The court finds in favor of the defendant commission.
Based on a stipulation of the parties, the court finds that at all relevant times the plaintiff has held an option to purchase the property in question and was the applicant before the commission concerning the development of that property. The plaintiff is, therefore, aggrieved by the decisions of the CT Page 3725 commission and has standing to bring this appeal. See Fletcher v.Planning Zoning Commission, 158 Conn. 497 (1969); Goldfield v.Planning Zoning Commission, 3 Conn. App. 172, 176 (1985).
The facts essential to the court's decision are not in dispute and are fully reflected in the record. In July 1998, the plaintiff submitted three applications to the commission in connection with the proposed development of a gas station and convenience store on the property in question, which is located on the northeast corner of the intersection of Cedar Street and Fenn Road in Newington. The area is designated as B Business Zone, which allows the operation of gas stations by special permit from the commission. The applications submitted by the plaintiff included one for a special permit for the operation of a gas station (50-98), one for site plan approval (49-98), and one for a special permit to erect a sign on the premises. This appeal pertains only to applications 50-98 and 49-98.
As they relate to this appeal, Newington zoning regulations pertaining to special permits for gas stations and site plan approval contain similar provisions. In reviewing an application for a special permit, the commission is required by section 5.2.6 of the regulations to consider, inter alia, the following factors:
"A. The need for the proposed use in the proposed location."
 "B. The existing and probable future character of the neighborhood in which the use is located."
 "D. Traffic circulation within the site; amount, location and access to parking; and traffic load or possible circulation problems on existing street. . . ."
In reviewing an application for site plan approval, the commission is required by section 5.3.3 of the regulations to consider, inter alia, the following factors:
 "A. The existing and planned future character of the adjacent property."
 "B. Traffic circulation within the site; amount, location and access to parking; traffic generated and possible traffic hazard or circulation problems on existing or proposed drives or streets." CT Page 3726
The commission held a public hearing on the plaintiffs applications in four sessions during September and October 1998. From the beginning, a major concern of the commission members was the impact that the gas station would have on the flow of traffic and the consequent public safety implications. In particular, these concerns related to preventing left hand turns from the site onto Cedar Street; the danger of congestion of vehicles on the site itself, because of the proximity to gas pumps; the hazard posed by vehicles leaving the site attempting to gain access to Route 9; and the hazard posed by left hand turns from the site onto Fenn Road.
During the course of the hearing sessions, the plaintiff presented extensive testimony and other evidence from engineers, architects and other consultants it had retained to address the commission's concerns. The commission had also retained a consultant on traffic management, and he appeared and participated in the hearing, primarily in interpreting and evaluating the plaintiffs evidence. The commission members themselves were familiar with the location of the property and the traffic patterns presently existing.
The plaintiffs experts essentially contended that the final design of the project successfully addressed each of the traffic issues summarized above. In particular, the plaintiffs traffic consultant concluded that there would always be sufficient gaps in the traffic on Fenn Road and Cedar Street to safely accommodate vehicles exiting into those roadways from the proposed gas station. The plaintiffs experts also contended that the number of pumps and the placement of the pumps as proposed would eliminate any hazard that might be caused by the "stacking" of vehicles within the site.
Presumably, the commission members had their consultant's final report at the time they voted to deny the plaintiffs applications. That report was received by the town planner on November 16, 1998, which was after the close of the final session of the public hearing, and they voted on December 9. In that report, he concluded that the problems posed by vehicles exiting from the site had been adequately addressed by the plaintiffs plan. He continued to believe, however, that the proposed placement of the pumps would cause an unacceptable on-site stacking problem. The record is crystal clear, however, that the commission members throughout the public hearing voiced continual CT Page 3727 misgivings about the impact the project would have on vehicular traffic both on and off site.
In addition to evidence in the record concerning traffic, there is evidence concerning the need for a gasoline station/convenience store at that location. The plaintiff presented the testimony and report of William O'Brien of Lexington Appraisal Group, a real estate appraisal firm, to the effect that the highest and best use of the property included the operation of a gas station. In opposition, an attorney for a competitor operating a nearby gas station appeared and pointed out that a number of gas stations were already operating within about a mile radius of the property in question.
Finally, with respect to the planned future character of the neighborhood, the commission noted that the Town Plan of Conservation and Development recommends that the neighborhood be developed as a "technology and business educational enterprise area."
On December 9, 1998, at a regular meeting of the commission, the commission voted to deny the applications for a special permit and site plan. The commission subsequently issued "certificates of action" setting forth in detail the reasons for its denial of each application. With respect to the special permit (#50-98), for the operation of a gas station, the commission stated three reasons, which may be summarized as follows:
 1. The plaintiff did not demonstrate that there is a "pressing" need for a gas station at the site.
 2. The use of this site for a gas station is incompatible with the development of the area as recommended in the Town Plan of Conservation and Development.
 3. The use of the site for a gas station as designed by the plaintiff would create traffic hazards both on and off-site.
With respect to the site plan, the commission stated two reasons: traffic hazards and incompatibility with the town's plan for future development. In their details, these reasons are essentially the same as stated in the denial of the special permit. CT Page 3728
In support of its appeal, the plaintiff advances essentially four arguments, which may be summarized as follows:
 1. The plaintiff indisputably complied with all of the special provisions of the zoning regulations relating to the construction and operation of gas stations and it is, therefore, improper for the commission to use general provisions of the regulations as the basis for denying the special permit.
 2. There is no substantial evidence supporting the commission's findings regarding the general provisions.
 3. The commission had no authority to consider traffic hazards or congestion as reasons for denying the application for the special permit to operate a gas station at the site.
4. The hearing process was flawed by "fundamental unfairness."
 I. GENERAL vs. SPECIAL PROVISIONS
Sections 5.2.6 and 5.3.3 of the regulations, relating to special permits and site plan approval respectively, are the "general" provisions that the commission applied in reaching its decisions to deny the plaintiffs applications. Section 5.2.1, which pertains to section 5.2.6, provides, in relevant part, "[t]he following general procedures, requirements and standards apply and must be followed, as well as those standards and conditions particular to the use permitted in these regulations. Such conditions and standards are necessary to protect the public health, safety, convenience and property values." Similarly, section 5.3.3 provides, in relevant part, "[i]n reviewing site plans, the Commission shall consider the following (general provisions), as well as the conditions and standards herein." Sections 5.2.6 and 5.3.3, as noted above, contain the general provisions concerning future planned development, need for the project, and traffic problems, that the commission applied in denying the plaintiffs applications.
Section 6.11 of the regulations contains specific provisions relating to the use of property for motor vehicle service stations, including gas stations. There is no dispute that the plaintiffs project as designed would comply with all of these provisions. CT Page 3729
The plaintiff argues that since its applications complied with all of the provisions of the regulations in section 6 that apply specifically to gas stations, it was "improper" for the commission to subject the applications to the general requirements of the regulations in section 5. The plaintiff cites no authority for this argument, and it appears to conflict with our law.
"[G]eneral considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit. Also, we have stated that before the zoning commission can determine whether the specially permitted use is compatible with the uses permitted as of right in the particular zoning district, it is required to judge whether any concerns, such as parking or traffic congestion, would adversely impact the surrounding neighborhood. Connecticut courts have never held that a zoning commission lacks the ability to exercise discretion to determine whether the general standards in the regulations have been met in the special permit process. If the special permit process were purely ministerial there would be no need to mandate a public hearing." (Citations and internal quotation marks omitted). Irwin v. Planning and Zoning Commission, 244 Conn. 619, 626 (1998).
The commission plainly had the authority — indeed, it had the obligation — to consider the factors set forth in section 5 of the regulations in determining whether to approve or deny the plaintiffs applications. The plaintiffs argument to the contrary may not be sustained.
 II. ADEQUACY OF THE EVIDENCE
In general, the scope of the court's review of a decision of the commission is limited:
 General Statutes 8-6 entrusts the commission with the function of interpreting and applying its zoning regulations . . . The trial court must determine whether the commission has correctly interpreted its regulations and applied them with reasonable discretion to the facts . . . The plaintiffs have the burden of showing that the commission acted improperly . . . The trial court can sustain the plaintiffs appeal only upon a determination that the decision of the commission was unreasonable, arbitrary or illegal . . . It must not substitute its CT Page 3730 judgment for that of the zoning commission and must not disturb decisions of local commissions as long as honest judgment has been reasonably and fairly exercised. (Citations omitted.) Baron v. Planning Zoning Commission, 22 Conn. App. 255, 256-257 (1990).
More specifically, with respect to the adequacy of the evidence supporting a local agency's decision, the law clearly prohibits the court from usurping the agency's role as fact finder:
 In challenging an administrative agency action, the plaintiff has the burden of proof . . . The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo, . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision . . . [T]he reviewing court must sustain the agency's determination if an examination of the record discloses evidence that supports any one of the reasons given. . . . The evidence, however, to support any such reason must be substantial; [t]he credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency. . . . [E]vidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The reviewing court must take into account (that there may be) contradictory evidence in the record . . ., but the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. (Citations omitted; internal quotation marks omitted.) Samperi v. Inlands Wetlands Agency, 226 Conn. 579, 587-588 (1993).
 A. Need
In determining whether the plaintiffs application for a special permit to operate a gas station demonstrated a "need" for such a business in that location, as required by section 5.2.6.A of the regulations, the commission had evidence in the form of testimony and a report from the plaintiffs expert real estate appraiser and, in opposition, the statements from a competitor and some members of the public concerning the number and proximity of CT Page 3731 other gas stations. This evidence was, as noted, that there are already several gas stations within about a mile radius of the property in question and that there are already about twelve gas stations operating in the town. On the basis of this evidence. the commission determined that the plaintiff did not demonstrate that there is a "pressing" need for a gas station at its location.
The plaintiff points out that the commission qualified the term "need" with the word "pressing" in stating its decision and argues that the commission thereby imposed a stricter standard than is required by the literal language of the regulations. The plaintiff also argues that the evidence tending to show a lack of need was presented by a competitor and for that reason should not have been considered.
Unquestionably, the requirement that the commission consider the "need" for a gas station at the location in question invites the commission to employ a degree of subjectivity and personal opinion in reaching its determination. Such a deliberative process is not improper, however, so long as the decision is not unreasonable or arbitrary and so long as "honest judgment (is) reasonably and fairly exercised." Baron v. Planning ZoningCommission, supra, 22 Conn. App. 257.
In this case, as noted, the commission had evidence regarding the number of other gas stations in close proximity to the subject property, as well as in the town as a whole. There is absolutely nothing in the record to indicate that the commission's decision was based on anything other than its members' honest evaluation of those facts nor is there anything to suggest that its judgment was not reasonably based on relevant and substantial evidence. In particular, the fact that some of the evidence concerning the number of other gas stations already operating in the town was presented by a competitor of the plaintiff is not sufficient to invalidate the decision. In Bensonv. Board of Appeals, 129 Conn. 280, 284 (1942), cited by the plaintiff, the court observed that it is improper for a zoning board of appeals to base its decision on a desire to suppress competition. Although the commission's decision on the issue of need in this case plainly did not encourage what might be considered healthy competition, there is nothing in the record to indicate that the decision was based on any desire of the commission illegally to favor a competitor of the plaintiff. Rather, the evidence in the record suggests that the decision was CT Page 3732 simply a judgment call of the commission, which was well within its discretion. As noted, our law does not permit the court to second guess the commission in such circumstances. Baron v.Planning Zoning Commission, supra, 22 Conn. App. 256.
Finally, with respect to the commission's determination on the issue of need, the plaintiff argues that the commission held it to a higher standard than the regulations require when it denied the application because of a lack of a "pressing" need. The court has examined the record carefully, especially the discussions among the commission members concerning the number and availability of existing gas stations in the nearby area and the town as a whole. The members recognized the difficulty of quantifying the somewhat nebulous term "need" and also recognized that the term is susceptible to different interpretations. In the end, however, the commission expressly stated that its determination was based on its finding that "the public is already adequately served" by gas stations currently existing in the town. In the court's view, that is a reasonable criterion to apply in making the determination required by the regulation. In view of the evidence in the record, the discussions of the commission members, also in the record, and the express reason given by the commission for its determination, the court concludes that the commission's use of the term "pressing" was simply a figure of speech and that it does not indicate that the commission was exceeding the standard set forth in the regulation.
In summary, the court finds that the commission's determination that the plaintiff had not demonstrated sufficient need for the establishment of a gas station on the property was supported by substantial evidence and that it was not unreasonable, arbitrary or illegal.
 B. Future Development of the Area/Neighborhood
The commission found that the use of the property in question as a gas station would be incompatible with the planned future HDvelopment of the area and, for that reason, the applications failed to comply with sections 5.2.6.B and 5.3.3.A of the regulations. Specifically, the commission stated "[t]his finding is based on the Town Plan of Conservation and Development's land use recommendations for a technology and business educational enterprise area for the former 291 corridor land now owned by CCSU (Central Connecticut State University), and transportation CT Page 3733 plans for the Route 175/Cedar Street corridor and Hartford West Major Investment Study which recommend a transit center and busway along the adjacent abandoned rail line."
In the court's view, this determination is not supported by sufficient evidence in the record. The Town Plan of Conservation and Development is not part of the record. There is nothing in the record to indicate that any of the commissioners had ever read the plan. The town planner, who was present at all of the proceedings in this case, did not present any explanation of the plan. Indeed, throughout the proceedings, there are only the most cursory references to the provisions of the plan, and there is nothing to indicate how or why a gas station at the site in question is incompatible with it.
Because of the lack of evidence in the record, the court finds that the commission's decision with respect to this issue may not be sustained. Since this was only one of the reasons given for the commission's decisions, however, and since there are other reasons given which are supported by substantial evidence, the court's conclusion with respect to this issue is not a basis for overturning the decisions.
 C. Traffic
The principal basis for the commission's decisions denying the plaintiffs applications for a special permit and for site plan approval was its determination that the establishment of a gas station at the site would create a variety of traffic hazards. This issue consumed by far the greatest amount of time and effort on the part of the plaintiff, its attorney, its experts, members of the public, and the commission members and staff. As a threshold issue, the plaintiff claims in its brief on appeal that the state department of transportation has essentially preempted that field and that the commission was not authorized to consider traffic problems in ruling on the applications. The plaintiff cites General Statutes § 14-311 and the fact that the department of transportation had given preliminary approval of the project.
The plaintiffs contention in its brief that the commission was not authorized to consider potential traffic hazards may not be sustained. There is nothing in General Statutes § 14-311 to suggest that the department of transportation has exclusive jurisdiction over the location of gas stations within a CT Page 3734 municipality. Indeed, this notion is conclusively contradicted by the provisions of General Statutes § 14-320 et seq., which establishes a procedure by which the commissioner of consumer protection delegates authority to the defendant plan and zoning commission to review and act on applications to establish gas stations at particular locations in the town. Section 14-322
specifically requires the defendant commission to take into consideration, inter alia, "intersecting streets, traffic conditions, width of highway and effect of public travel." Furthermore, as previously noted, our common law requires the defendant commission to consider potential traffic problems in reviewing applications for special permits. Irwin v. Planning andZoning Commission, supra, 244 Conn. 626.
At oral argument on this appeal, the plaintiff did not press the jurisdictional issue, but rather contended, as it argued in its brief, that the commission failed to act on the plaintiffs application for a certificate of approval under section 14-320 et seq. This argument, likewise, may not be sustained. In the notice of public hearing on the plaintiffs applications, the commission warned that it would consider the application for a special permit pursuant to section 6.11 of the zoning regulations. That section specifies that it is the town's codification of its statutory duties under General Statutes § 14-320 et seq. The commission did, therefore, take the action required by those statutes when it acted on the plaintiffs applications in this case.
The plaintiffs most vigorous argument in support of its appeal is that the evidence in the record is insufficient to support the commission's determination that the establishment of a gas station at the site, as designed, would create traffic congestion and potential hazards. As set forth in its written "Certificate of Action" issued with respect to the application for the special permit, the commission identified four specific traffic problems that rendered the project unacceptable: 1) left turn exits from the site onto Fenn Road at peak traffic times cannot be made safely; 2) right turn exits from the site onto Cedar Street by vehicles seeking access to Route 9 cannot be made safely; 3) delays in vehicles exiting the site will cause unsafe congestion at the pump aisles; and 4) the number and orientation of the pumps will cause unsafe congestion on the site.
All of the problems noted by the commission in its decision, summarized above, were identified early in the proceedings by CT Page 3735 commission members and the commission's traffic consultant, James Bubaris. Regarding Fenn Road, the concern was that there would not be sufficient "gaps" in rush hour traffic to permit safe entry by vehicles turning left from the site. Regarding Cedar Street, the concern was that a vehicle exiting to the right, heading for the Route 9 ramp, would have to cross over a right turn-only lane and then two other lanes in order to gain access to a left turn lane for Route 9. The commission members believed that rush hour traffic would not permit such a maneuver to be made safely. These problems, the members believed, would cause a back-up of vehicles on the site which would create an unsafe condition around the gas pumps. Regarding the number and orientation of the pumps, the commission's consultant Bubaris believed that they should be reduced in number from six to four and that they should be realigned from a north-south to an east-west orientation. In his opinion, these changes would reduce the potential for congestion on site.
The plaintiff and its experts spent considerable effort and time over the course of the public hearing to address the concerns summarized above. After conducting a "gap study," the experts concluded that traffic on Fenn Road would accommodate left turns from the site even at peak rush hours. And Bubaris ultimately seemed to agree with that assessment. The plaintiffs experts also contended that traffic on Cedar Street would safely permit vehicles making right turns from the site could safely cross over to the Route 9 access ramp. And Bubaris ultimately seemed to agree with that assessment also. The question of on site congestion remained in dispute. Bubaris continued to recommend that the project design be changed to realign the pumps.
Although the experts ultimately agreed that both the Fenn Road and Cedar Street exits patterns would not pose traffic hazards, the commissioners themselves remained unconvinced. During the hearing and during their discussions, the commission members cited their own experiences at the intersection and expressed skepticism of the experts' methodology and conclusions.
As can be seen from the brief summary of record, above, the commission had abundant evidence on which to base its decision. The record is particularly clear in revealing the personal observations of several of the commission members with respect to the flow of traffic at the site and the conclusions they reached as to the potential difficulties and hazards that would be posed CT Page 3736 by the establishment of a gas station with entrances and exits on both Fenn Road and Cedar Street. "[L]ay members of commissions (may) rely on their personal knowledge concerning matters readily within their competence, such as traffic congestion and street safety." (Citations omitted.) Feinson v. Conservation Commission,180 Conn. 421, 427 (1980). For all of the above reasons, the court concludes that there is sufficient and substantial evidence in the record to support the commission's decision with respect to traffic hazards.
 III. FAIRNESS OF HEARING PROCESS
The plaintiff correctly argues that the proceedings of the commission are subject to common-law rules of "fundamental fairness." These include the right to notice, the right to know the facts on which the commission is asked to act, the right to present evidence, and the right to cross-examine opposing witnesses. Grimes v. Conservation Commission, 243 Conn. 266,273-274 (1997).
The plaintiff contends that in this case the hearing process was flawed by "fundamental unfairness." This contention is based on the absence of the commission's consultant, James Bubaris, from the last session of the public hearing on October 28, 1998, and the fact that he submitted a final report to the commission in November after the hearing had been closed, thereby denying the plaintiff an opportunity to respond. The plaintiffs arguments may not be sustained.
As indicated previously, Bubaris and the plaintiffs experts focused on essentially the same issues throughout the proceedings. These included the potential hazards posed by vehicles exiting the gas station and congestion of vehicles on the site, particularly at the gas pumps. Bubaris submitted a report initially on September 23, 1998, and appeared at the session of the public hearing on that date and testified. In that report and at the hearing, Bubaris stated his concerns about the exits and on-site congestion. At the October 28 session, Bubaris was absent, but the town planner, Ed Meehan, was present and stated what he believed was Bubaris's position. Bubaris's November report, which is the particular focus of the plaintiffs claim of unfairness, states his belief that the exit problems are now satisfactorily resolved — that is, agreeing with the plaintiffs experts, but continues to recommend that the pumps be reduced in number and realigned. CT Page 3737
The foregoing summary of Bubaris's participation in the proceedings demonstrates that his absence from the October 28 session of the hearing and his late filed report had little if any significance in the formulation of the commission's decisions. Although Bubaris ultimately sided with the plaintiff on the exit issues, the commissioners exercised their own judgment and rejected the opinions of both Bubaris and the plaintiffs experts. With respect to the onsite congestion issue, Bubaris's November report essentially reiterated what he had said consistently before. There was, therefore, nothing in the November report that the commission had not heard before, on the record, or that had any significant impact on the commission's decisions. Under these circumstances, the plaintiffs claim of unfairness may not be sustained. See Norooz v. Inland WetlandsAgency, 26 Conn. App. 564, 573-574 (1992).
For all of the foregoing reasons, the appeal is dismissed.
Maloney, J.