# BUDDINGTON PARK CONDOMINIUM ASSOCIATION ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE CITY OF SHELTON ET AL.
## (AC 31525)

DiPentima, C. J., and Lavine and Flynn, Js.

Argued October 19—officially released December 28, 2010

*Timothy J. Lee,* for the appellants (plaintiffs).

*Ramon S. Sous,* assistant corporation counsel, for the appellee (named defendant).

*Dominic J. Thomas, Jr.,* for the appellees (defendant Carol Farrell et al.).

*Opinion*

LAVINE, J. The plaintiffs, Buddington Park Condominium Association (association), Lynn Farrell and Maurice Cayer, appeal from the judgment of the trial court dismissing their zoning appeal from a decision of the defendant planning and zoning commission of the city of Shelton (commission).[1] On appeal, the plaintiffs claim that the trial court improperly determined that (1) they were not denied due process when the commission received, ex parte, a revised site plan from the applicants, the defendants Carol Farrell and Robert Farrell, following the close of the public hearing, (2) the commission's resolution regarding the application is not unconstitutionally vague, although it does not provide standards for setbacks and building locations, and (3) the applicants provided adequate notice of the property that was the subject of the amendment to the zoning regulations, although the notice failed to include a metes and bounds description of the property. We agree with the plaintiffs' first and third claims and, therefore, reverse the judgment of the trial court.[2]

---

[1] Carol Farrell and Robert Farrell, owners of real property located at 122 Buddington Road, Shelton, also are defendants.

[2] Because we reverse the judgment on the basis of the plaintiffs' first and third claims, and the second may not recur, we do not need to address the second claim on appeal.

The following facts and procedural history are relevant to our resolution of the plaintiffs' appeal. On September 11, 2007, the applicants submitted to the commission, pursuant to § 34 of the Shelton zoning regulations (regulations), an application for a planned development district (district) to develop seven residential units on their property at 122 Buddington Road, Shelton, consisting of 3.35 acres. The commission held hearings on October 23 and November 27, 2007, and conditionally voted to approve a resolution related to the application on February 26, 2008. The plaintiffs filed an appeal in the trial court on April 9, 2008, claiming that the commission's approval of the application was illegal, arbitrary and an abuse of the discretion vested in the commission. More specifically, the plaintiffs alleged that the commission approved the district despite procedural irregularities, despite the fact that the Shelton inland wetlands commission had not submitted a report, despite the fact that the district is inconsistent with the surrounding neighborhood and the Shelton plan of conservation and development, and despite the fact the decision is not supported by the record. The plaintiffs also alleged that the approval was in violation of the regulations and state law and was not rendered within the time permitted by law.

The trial court made the following findings of fact. Lynn Farrell and Maurice Cayer own units within the association located at 2 Buddington Park in Shelton. The plaintiffs' property is within 100 feet of the parcel of land that is the subject of the appeal and, therefore, the plaintiffs are aggrieved. Quoting from *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 846 A.2d 950, cert. denied, 270 Conn. 905, 853 A.2d 521 (2004), the court noted that in considering an application for a planned development district, the commission acts in a legislative capacity, rather than an administrative one, and that it has wide and liberal discretion

and is free to amend its regulations "whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change." (Internal quotation marks omitted.) Id., 643. The court found that § 34 of the regulations permits the creation of a district, which is a three step process. The first step is to locate the property within a special development area, the second step is to file an informal application with initial development concept plans and the third step is to file a final site development plan. In this case, the court found that the plaintiffs had appealed from the commission's approval of the informal application, or step two of the process.

The court also found that the commission had held a public hearing on the informal application on October 23, 2007, at which time members of the public in attendance voted and submitted a petition requiring the commission to approve the application by a two-thirds majority. The public hearing was continued to November 27, 2007, and closed following the applicants' presentation and after opponents were given an opportunity to speak. On February 26, 2008, the commission held a special meeting to consider the application and expressed concern regarding the number of units proposed. The court found that Anthony Panico, the town's planning consultant, "referred to a draft resolution which left the number of units blank. The applicant had suggested lowering the units from seven to six, which resulted in removing objections to wetland intrusion and spacing between units, as well as other considerations." The court then stated that "[r]eceiving information from staff members after the public hearing is closed is permitted." Moreover, the court found that although the plaintiffs claim prejudice, they "offer[ed] no explanation as to how they were prejudiced by the reduction of the number of units as proposed" by the

applicants.[3] Continuing, the court stated that "[b]ecause the applicant[s] had yet to go before the [commission] on the submission of its final detailed plans under the three stage process, the plaintiffs would have an opportunity to be heard on the number of units and any claim of prejudice by the plaintiffs could be considered." The court dismissed the appeal by memorandum of decision filed March 31, 2009. Following this court's granting of certification to appeal, the plaintiffs appealed.

The plaintiffs' claim is that the court improperly concluded that they were not prejudiced by the commission's receipt of ex parte communications from the applicants after the public hearing was closed. We agree.

Our review of the record of the commission's February 26, 2008 meeting discloses the following. Richard D. Schultz, administrator, stated that the commission had directed its staff to draft a favorable resolution pending additional discussions as to the number of units in the district. Panico read the proposed resolution, which did not specify the number of units in the district. Patrick Lapera, vice chair of the commission, opened the discussion by stating that the commission needed to come to a decision regarding the number of units, noting that the applicants had requested seven units. Panico informed the commission that the staff had pointed out some geometric spacing problems to the applicants, and the applicants "provided a response as to how they could address those issues by removing one of the units down below bringing the number of units down to six, thereby addressing a number of other

---

[3] In their brief to the trial court, the plaintiffs represented that at the public hearing continued to November 27, 2007, those opposed to the application expressed concern about the district's traffic impact, storm drainage, environmental and ecological impact and general concerns regarding the legality of the planned development district regulations, among other things. The number of units was not mentioned.

issues." Commissioner Leon Sylvester asked "to see the site plan for six homes" and later observed that the applicants "have voluntarily reduced the number seven because it was a problem to this commission." Following a discussion, the commission voted four to two to approve the district application with six units. On the basis of our review of the record, we conclude that the commission received an ex parte communication from the applicants that it considered in approving the proposed district and that the court, therefore, improperly concluded that the plaintiffs had failed to demonstrate prejudice.

On appeal to this court, the plaintiffs complain that the applicants' revised plan was not made available for public comment and/or cross-examination by those opposed to the district at the public hearing, thereby denying them due process. They also claim that they were prejudiced by the commission's consideration of the revised plan because without the revised plan, the commission may have denied the application for a seven unit district.

"Ordinarily, zoning authorities act in either a legislative or an administrative capacity [and] the function of creating zones and adopting zoning regulations is . . . essentially legislative." (Citation omitted.) *Burke* v. *Board of Representatives*, 148 Conn. 33, 38, 166 A.2d 849 (1961). Neither our state nor the federal constitution guarantees "any particular form of state procedure. Due regard must be had to the nature of the proceeding and the individual right affected by it. *Katz* v. *Brandon*, 156 Conn. 521, 537, 245 A.2d 579 (1968). The fact that the proceeding is legislative, rather than adjudicative, in nature plays a role in the determination of what process is due. . . . [C]onstitutional principles permit an administrative agency to organize its hearing schedule so as to balance its interest in reasonable, orderly and nonrepetitive proceedings against the risk of erroneous

deprivation of a private interest." (Citation omitted; internal quotation marks omitted.) *Protect Hamden/ North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission,* 220 Conn. 527, 554–55, 600 A.2d 757 (1991).

"[W]hile proceedings before zoning and planning boards and commissions are informal and are conducted without regard to the strict rules of evidence . . . nevertheless, they cannot be so conducted as to violate the fundamental rules of natural justice. . . . The commission could not properly consider additional evidence submitted by an applicant after the public hearing without providing the necessary safeguards guaranteed to the opponents of the application and to the public. This means a fair opportunity to cross-examine witnesses, to inspect documents presented and to offer evidence in explanation or rebuttal." (Internal quotation marks omitted.) *Blaker* v. *Planning & Zoning Commission,* 212 Conn. 471, 477–78, 562 A.2d 1093 (1989). "Not to do so would deny those [supporting or] opposing the application the right to be fully apprised of the facts on which the [agency] is asked to act." (Internal quotation marks omitted.) *Norooz* v. *Inland Wetlands Agency,* 26 Conn. App. 564, 570, 602 A.2d 613 (1992).

Our Supreme Court has stated that "planning and zoning commissions are entitled to technical and professional assistance in matters that are beyond their expertise, and that such assistance may be rendered in executive session. . . . We held, however, that [t]he use of such assistance . . . cannot be extended to the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." (Citation omitted; internal quotation marks omitted.) *Blaker* v. *Planning & Zoning Commission,* supra, 212 Conn. 478.

In the case before us, the applicants argue that the commission did not receive an ex parte communication because Panico, its consultant, provided the information. The record, however, discloses that Panico conveyed a revised site plan to the commission, which the applicants had provided after Panico discussed geometric spacing problems with the applicants' engineer. Panico stated to the commission that the applicants had demonstrated to the staff that they could take out one of the units and satisfy the staff's concerns. Sylvester asked to see the revised plan. We consider it significant that the resolution drafted by the staff did not contain a recommended number of units. The reduction in the number of units was suggested by the applicants via their revised site plan, which at least one commissioner asked to review. At the February 26, 2008 meeting, the commission extensively discussed the members' concerns regarding the number of units in the proposed district and referred to the revised site plan submitted by the applicants' engineer. On this record, we cannot conclude that the commission's staff merely supplied technical information to the commission that it considered in approving the application. The information originated with the applicants; Panico was a conduit.

"[T]he technical and professional assistance to which a municipal administrative agency is entitled does not include the receipt, ex parte, of information supplied by a party to the controversy without affording his opposition an opportunity to know of the information and to offer evidence in explanation or rebuttal." (Internal quotation marks omitted.) *Norooz* v. *Inland Wetlands Agency*, supra, 26 Conn. App. 570. There are, however, exceptions to this rule. See *Holt-Lock, Inc.* v. *Zoning & Planning Commission*, 161 Conn. 182, 184–85, 286 A.2d 299 (1971) (agency considered report received subsequent to public hearing submitted by its outside consultant); *McCrann* v. *Town Plan & Zoning*

*Commission*, 161 Conn. 65, 77–78, 282 A.2d 900 (1971) (agency met in executive session with planning consultant who previously spoke in favor of site plan); *Kyser* v. *Zoning Board of Appeals*, 155 Conn. 236, 249–51, 230 A.2d 595 (1967) (municipal officials called into executive session to explain discrepancies in record); *Yurdin* v. *Town Plan & Zoning Commission*, 145 Conn. 416, 420–21, 143 A.2d 639 (agency permissibly conferred with planning director and technician to obtain explanation of certain evidence), cert. denied, 358 U.S. 894, 79 S. Ct. 155, 3 L. Ed. 2d 121 (1958). None of the exceptions applies to the facts of this case, in which the applicants submitted a revised site plan that was presented to and considered by the commission.

"The proper inquiry for a reviewing court, when confronted with an administrative agency's reliance on non-record information provided by its technical or professional experts, is a determination of whether the challenged material includes or is based on any fact or evidence that was not previously presented at the public hearing in the matter." *Norooz* v. *Inland Wetlands Agency*, supra, 26 Conn. App. 573–74. Here, Panico evaluated the revised site plan and answered the commission's questions regarding the plan. The revised site plan was not presented to the commission during the public hearing and, therefore, constituted impermissible ex parte communication, a violation of the plaintiffs' right to due process.

This conclusion, however, does not end our consideration of the plaintiffs' claim. We must now determine whether the court improperly concluded that the plaintiffs were not prejudiced by the ex parte communication. In *Blaker* v. *Planning & Zoning Commission*, supra, 212 Conn. 473, our Supreme Court held "that the applicant's ex parte communication relieved the aggrieved party of the initial burden of demonstrating that the commission acted illegally and shifted the initial

burden to the applicant to demonstrate that the communication was harmless." "[O]nce it has been demonstrated that an improper ex parte communication has occurred, a presumption of prejudice arises. Although this presumption is rebuttable, the burden of showing that a prohibited ex parte communication between a commission and an applicant has not prejudiced a party must be allocated to those seeking to uphold the validity of the commission's decision." Id., 480. Although the trial court erroneously found that there was no ex parte communication, it also found that the *plaintiffs* had failed to explain how they were prejudiced by a reduction in the number of units proposed. In doing so, the court improperly shifted the burden of persuasion onto the plaintiffs. Moreover, the record contains no evidence of the facts presented by the defendants to overcome the claim of prejudice, and the court made no factual findings in that regard. The court appears to have assumed that the plaintiffs objected to the district solely on the basis of the number of units. The plaintiffs, however, alleged that the district is inconsistent with the surrounding neighborhood and the Shelton plan of conservation and development.[4] We conclude that the plaintiffs were prejudiced by the ex parte communication.

The judgment is reversed and the case is remanded with direction to sustain the plaintiffs' appeal.

In this opinion the other judges concurred.

---

[4] We also agree with the plaintiffs' third claim that the court improperly concluded that, although the notice that identified the property did not contain a metes and bounds description of the property, it fulfilled the requirements of General Statutes § 8-3 (a) by giving notice of the address of the property and referring to the assessor's map 62, lot 31. See *Bridgeport* v. *Plan & Zoning Commission*, 277 Conn. 268, 279, 890 A.2d 540 (2006) (reference to map on file in office of separate agency does not constitute adequate notice of boundaries affected by proposed zone change); *Cassidy* v. *Zoning Commission*, 116 Conn. App. 542, 553, 976 A.2d 29 (2009) (same).